[Civ. No. 25964. Fourth Dist., Div. Two. Dec. 23, 1981.]

JOHN P. BRUNO et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ALPHA BETA COMPANY et al., Real Parties in Interest.

**COUNSEL**

John P. Bruno, in pro. per., Brandlin & McAllister, Raymond P. Hernacki, Bonnie L. McCarthy, Lipsig, Rosenfield & Leff and J. David Rosenfield for Petitioners.

No appearance for Respondent.

Pillsbury, Madison & Sutro, Richard W. Odgers, C. Douglas Floyd, Lawler, Felix & Hall, Robert P. Mallory, Mark V. Berry, Donahue, Gallagher, Thomas & Woods, Robert N. Wood, Lawrence K. Rockwell, Rutan & Tucker, Garvin F. Shallenberger and Theodore I. Wallace, Jr., for Real Parties in Interest.

**OPINION**

**MORRIS, J.**—This petition for a writ of mandate presents the issue, previously undecided in California, of the propriety of using so-called "fluid class" or "cy pres" procedures to distribute damages in state antitrust class actions. We conclude that these methods of distribution are not per se improper in such cases. Consequently the trial court abused its discretion in granting a motion to strike those remedies from the petitioners' amended complaint. We grant the writ.

## I

Petitioners are eight plaintiffs suing, on behalf of themselves and all others similarly situated, three supermarket corporations. It is alleged that between mid-1977 and July 14, 1980, the three supermarkets unlawfully fixed milk prices at an artificially high level in Orange and Los Angeles Counties. Petitioners' amended complaint estimates that the class of milk purchasers they are seeking to represent in the action against the supermarkets consists of between 1 million and 1.5 million people, and that the average claim of each class member does not exceed $125.

Petitioners' amended complaint seeks treble damages for themselves and all class members, and requests that "said sum be paid on the basis of individual claims presented and to the extent class members do not present such claims, on the basis, as the Court deems appropriate, either: [¶] (1) of a lowering of fluid milk prices in [Orange and Los Angeles Counties] by each of the defendants, or [¶] (2) of depositing said sum with the State of California, or a unit thereof, for the limited purpose of being applied to eleemosynary purposes benefiting the consuming public in [Orange and Los Angeles Counties] . . . ." After the filing of the amended complaint, the supermarkets made a motion to strike from the complaint the above two methods of distributing those damages which would not be paid out on the basis of individual class member claims. The trial judge granted the motion, stating, "I think the cases are clear that this type of recovery would not be appropriate. May as well get the issue resolved and out of the way at this time."

The distribution methods at issue here are generically referred to as either "fluid class recovery" or "cy pres remedy." (See generally Comment, *Damage Distribution in Class Actions: The Cy Pres Remedy* (1972) 39 U.Chi.L.Rev. 448; Malina, *Fluid Class Recovery as a Consumer Remedy in Antitrust Cases* (1972) 47 N.Y.U.L.Rev. 477.) The topic of fluid class recovery regularly arises in class actions such as the present one, where the class has many members with relatively small individual claims. In such circumstances, if the class recovers a favorable judgment, it is likely that only a fraction of the class members will have the desire, and documentation, to file an individual claim for part of the damages. Fluid class recovery is thus invariably suggested as a way to distribute the usually substantial amount of remaining damages. The theory underlying fluid class recovery is that since each class member cannot be compensated exactly for the damage he or she suffered, the

best alternative is to pay damages in a way that benefits as many of the class members as possible and in the approximate proportion that each member has been damaged, even though, most probably, some injured class members will receive no compensation and some people not in the class will benefit from the distribution; or, as one commentator states it, "where funds cannot be delivered precisely to those with primary legal claims, the money should if possible be put to the 'next best' use." (Note, *Developments in the Law-class Actions* (1976) 89 Harv.L.Rev. 1318, 1522.)

Fluid class recovery normally will be accomplished by either one of the two methods suggested by petitioners. The defendant may be required to lower prices for a period of time or the residue of damages may be given to the state to be used to benefit class members. (See *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 388 [134 Cal.Rptr. 393, 556 P.2d 755] (conc. opn. of Tobriner, J.).)

In defense of the trial court's decision striking fluid class recovery from the complaint, the supermarkets claim that the California Supreme Court has expressly disapproved of fluid class recovery in class actions and that, even if fluid class recovery is not prohibited in all class actions, it can never be allowed in antitrust class actions. We find neither argument persuasive.

## II

The supermarkets rely on *Blue Chip Stamps* v. *Superior Court, supra*, 18 Cal.3d 381, to support their contention that fluid class recovery has been held improper for any class action lawsuit. *Blue Chip Stamps* should not be read as establishing such a broad rule.

The plaintiff class in *Blue Chip Stamps* sought to recover from the defendant trading stamp company alleged sales tax overcharges that were made by the company whenever the stamps were redeemed for merchandise. After the trial court had certified the suit as a proper class action, the Supreme Court issued a writ of mandate directing the dismissal of the class action. Although recognizing that class actions are appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer" (18 Cal.3d, at p. 385), the court stressed the responsibility of trial courts "'to carefully weigh respective benefits and burdens and to allow maintenance of the class action only

where substantial benefits accrue both to litigants and the courts.'" (*Id.*) The court said that one factor to be considered "is the probability each member will come forward ultimately, identify himself and prove his separate claim to a portion of the total recovery. (*Daar* v. *Yellow Cab Co.* [(1967)] 67 Cal.2d 695, 706, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)" (*Id.*, at p. 386.)

The *Blue Chip Stamps* court found the proposed class action improper because of the lack of benefit to the individual class members. In rebutting the plaintiffs' contrary arguments, the court stated: "Here, in proposing methods of recovery to the class, the lawyers suggest payment of claims either by cash upon informal presentation or by 'fluid recovery,' repayment of excess tax collections by reducing future charges. However, the proof of claim requirement established by *Daar* v. *Yellow Cab Co., supra*, 67 Cal.2d 695, 706, 713, must be followed before a claimant may recover damages, particularly when departure will result in recovery by others than those who paid. Similarly, 'fluid recovery' in the instant case provides no correlation between those who paid excess tax and those who might reap the benefit of a future reduction in redemption price. Those who left California after redeeming their stamps and those who have died will hardly benefit; further, the great reduction in the stamp business indicates that those still redeeming stamps represent no more than a fraction of those who paid the excess tax. In contrast, any excess reimbursement benefited a larger class, the citizenry of California which includes the purported class. Balancing fairness, should not any overcharge remain in the public treasury?" (18 Cal.3d, at pp. 386-387.)

We do not read *Blue Chip Stamps* as prohibiting fluid class recovery in California class actions. Contrary to the supermarkets' assertion, the "proof of claim requirement" was cited by the court only as the reason for disallowing the payment of individual claims on an informal presentation basis. Fluid class recovery was rejected only under the facts in that particular case, because it would not have had any constructive effect—neither disgorging any illegal profit held by the defendant, since the alleged sales tax overcharges had already been paid over to the state, nor compensating the injured class members. There would have been no compensatory effect, because, inter alia, there was "no correlation" between the injured class members and those who would have benefited from a future price reduction. As Justice Tobriner wrote, "there is not enough of an overlap in this case between the class of individuals injured by defendant's conduct and the class of individuals who

would benefit from distribution of the fund through the market to render this form of fluid recovery a rational means of compensating class members." (18 Cal.3d, at p. 388 (conc. opn. of Tobriner, J.).) Fluid class recovery should not be precluded in all class actions merely because it was inappropriate in the *Blue Chip Stamps* case. (See also Note (1978) 66 Cal.L.Rev. 215, 226-228.)

Nor is fluid class recovery contrary to the law stated in *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695. *Daar,* like *Blue Chip Stamps,* involved the question of the propriety of maintaining a lawsuit as a class action. The *Daar* court analyzed the lawsuit, which sought to recover overcharges made by the defendant cab company to the class of taxi passengers, and found that it satisfied the two requirements for bringing a class action. The issue of damages arose in the discussion of both requirements. First, in holding that there was an ascertainable class, the Supreme Court stated, "If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment. The fact that the class members are unidentifiable at this point will not preclude a complete determination of the issues affecting the class. Presumably an accounting in the suit at bench will determine the total amount of the alleged overcharges; any judgment will be binding on all the users of taxicabs within the prior four years. However, *no one may recover his separate damages until he comes forward, identifies himself and proves the amount thereof."* (*Id.,* at p. 706, italics added.) Second, the court found that there were a sufficient number of questions of law and fact common to the cases of all members of the class. The court stated, "The fact that *each individual ultimately must prove his separate claim* to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper." (*Id.,* at p. 713, italics added.) Although different class members had suffered different amounts of individual damages, the class as a whole was "entitled to recover the overcharges under a common set of facts" since the percentage rate of the overcharges and the manner in which the overcharges were made were uniform for all class members. For the class to recover, "[p]roof of separate claims would not be required." (*Id.,* at p. 714.)

In the present case, the supermarkets cite the *Daar* language emphasized above and another case that reiterates that language (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 809, 815 [94 Cal.Rptr. 796, 484

P.2d 964, 53 A.L.R.3d 513]; see also *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]) as further "proof" of the Supreme Court's proscription of fluid class recovery. This interpretation is unconvincing when the isolated phrases are read in the context of the entire case. The *Daar* court was concerned primarily with the efficacy of *proving* liability and damages on a classwide basis. To the extent that the court did discuss the *distribution* of the class damages once they were actually proved, it stated that the class member who sought his individual share would have to come forward, identify himself and prove the amount of his claim. *Daar* never dealt with the question of what might be done with those damages that remain after the individual claim process is concluded. Indeed, the issue was expressly left undecided. In a footnote, it was observed that the state, as amicus curiae, had suggested that any portion of the class damages remaining uncollected after seven years might escheat to the state. The court responded that, "in the present posture of this case, such an argument is prematurely raised and will not be considered here. It lies within the sound discretion of the trial court, within the dictates of the applicable law, to determine the manner in which any further proceedings will be conducted." (67 Cal.2d, at p. 715, fn. 15.)[1]

Moreover, fluid class recovery, when utilized in appropriate cases, is consistent with the philosophy underlying *Daar* and *Vasquez*. ■ While compensation of injured persons is a primary goal, class actions also serve the important purpose, when individual lawsuits are not feasible, of removing ill-gotten gains from the hands of those engaged in unlawful practices. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d, at p. 808; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d, at p. 715.) Absent the use of fluid class recovery, some class actions, those where proof of individual claims is impractical, would neither compensate nor deter, for "to allow the defendant to insist upon proof of individual claims will enable it to benefit from the cumbersome nature of legal proceedings and the lack of sophistication and indolence of the consumer, and will reward his foresight in stealing from the multitude in small amounts." (Landers, *Of Legalized Blackmail and Legalized Theft: Consumer Class Actions and the Substance—Procedure Dilemma* (1974) 47 So.

---

[1]Although of no precedential value, it is interesting to note that the *Daar* litigation was eventually terminated by a settlement that utilized a fluid class recovery method for distributing damages. Taxicab fares were reduced for future passengers over a certain period of time. (See Comment, *Manageability of Notice and Damage Calculation in Consumer Class Actions* (1971) 70 Mich.L.Rev. 338, 366, fn. 186.)

Cal.L.Rev. 842, 868.)[2] *Vasquez* tells us to "rely upon the ability of trial courts to adopt innovative procedures which will be fair to the litigants and expedient in serving the judicial process." (4 Cal.3d, at p. 821.) ■ Fluid class recovery is one of those procedures which should be considered in a class action. Whether it should actually be utilized depends on the individual circumstances of each case.

We are aware that other jurisdictions, especially some federal circuit courts, have disapproved the use of fluid class recovery as a possible procedure in class actions. (*Windham* v. *American Brands, Inc.* (4th Cir. 1977) 565 F.2d 59, 72, cert. den. (1978) 435 U.S. 968 [56 L.Ed.2d 58, 98 S.Ct. 1605]; *Van Gemert* v. *Boeing Co.* (2d Cir. 1977) 553 F.2d 812, 815; *Eisen* v. *Carlisle & Jacquelin* (2d Cir. 1973) 479 F.2d 1005, 1017-1018, vacated on other grounds (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140]; *Reader* v. *Magma-Superior Copper Company* (1973) 110 Ariz. 115 [515 P.2d 860, 861].)[3] The seminal case is *Eisen*, on which the other cited authorities rely. *Eisen* found fluid recovery to be not authorized under rule 23 of the Federal Rules of Civil Procedure, the federal class action legislation, and to be an unconstitutional violation of due process of law. The court held "the 'fluid recovery' concept and practice to be illegal, inadmissible as a solution of the manageability problems of class actions and wholly improper." (479 F.2d, at p. 1018.)

*Eisen* and its progeny are not persuasive. Whatever the validity of their analysis of federal civil procedure, we find it inapposite to an interpretation of California's class action statute (Code Civ. Proc., § 382), which *Eisen* itself called "very different in its phraseology from amended Rule 23." (479 F.2d, at p. 1012; see also *In re Hotel Telephone Charges* (9th Cir. 1974) 500 F.2d 86, 90.) ■ Additionally, we disagree with the conclusion that fluid class recovery causes a denial of due process of law. Up until the time when damages are distributed, a class action with fluid class recovery is the same as any other class action. The class is certified the same way, the burden of proof to show the defendant's liability is no different, and the calculation of the total

---

[2]The article cited states the "overwhelming" case for fluid class recovery as a matter of policy, but also argues that it is impermissible in antitrust class actions.

[3]The United States Supreme Court has yet to decide the validity of fluid class recovery. (*Boeing Co.* v. *Van Gemert* (1980) 444 U.S. 472, 480, fn. 6 [62 L.Ed.2d 676, 683, 100 S.Ct. 745]; *Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156, 172, fn. 10 [40 L.Ed.2d 732, 745, 94 S.Ct. 2140].)

amount of damages is accomplished in no less precise a manner.[4] A class action which affords due process of law to the defendant through the time when the amount of his liability is calculated cannot suddenly deprive him of his constitutional rights because of the way the damages are distributed. Where damages have been fairly and legally removed from his possession, a defendant's due process rights have been fully vindicated. (See Note (1973) 87 Harv.L.Rev. 426, 453-454.) Only the class members will have due process rights jeopardized when damages are distributed by fluid class recovery, but those rights can be protected by notice and claim procedures that give class members an adequate opportunity to obtain their individual shares before the residue is distributed through a fluid recovery procedure.

A better reasoned federal decision is the recent case of *Simer* v. *Rios* (7th Cir. 1981) 661 F.2d 655. *Simer* rejected the "two extreme positions—that is, whether a fluid recovery always can be used to surmount problems in the going forward of a class action or whether a fluid recovery is per se unconstitutional." (*Id.*, at p. 676.) Instead the court opted for "a careful case-by-case analysis of use of the fluid recovery mechanism." The court stated, "In this approach we focus on the various substantive policies that use of a fluid recovery would serve in the particular case. The general inquiry is whether the use of such a mechanism is consistent with the policy or policies reflected by the statute violated. This matter can be more particularized into an assessment of to what extent the statute embodies policies of deterrence, disgorgement, and compensation." (*Id.*)[5]

We agree with *Simer* that the propriety of using fluid class recovery is largely dependent upon the purposes of the law under which the class

---

[4]Due process does not prevent *calculation* of damages on a classwide basis. The Supreme Court has assumed the use of such a method (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d, at pp. 706, 714, 716). In many cases such an aggregate calculation will be far more accurate than summing all individual claims. (See Landers, *supra,* 47 So. Cal.L.Rev., at pp. 867-868.)

[5]After evaluating the circumstances of the case before it, the *Simer* court held that fluid class recovery was not appropriate, because "the relevant policies weigh against" it. The proposed class action was brought to recover money from the federal Community Services Administration under a program which it was administrating to provide cash assistance for fuel and utility bills to low income individuals and families, including the elderly. The court examined the statute that created the program and concluded that the policies of deterrence and disgorgement were inapplicable and that, although "the compensatory policy is seriously implicated . . ., [it] does not definitively lead one to conclude that fluid recovery is needed." (661 F.2d, at p. 677.) We, of course, express no opinion on the accuracy of the conclusion reached in *Simer*, since it is only the analytic approach with which we are concerned.

action is brought. (See also *Blue Chip Stamps* v. *Superior ·Court, supra*, 18 Cal.3d, at p. 389, fn. 3 (conc. opn. of Tobriner, J.).) The issue is whether a fluid class recovery will sufficiently further those purposes given the facts of the particular case under consideration. In *Blue Chip Stamps*, no valid purpose would have been served by using a fluid class recovery. However, in another case, a careful analysis may yield a different conclusion.

## III

█ Although fluid class recovery is not improper in class actions in general, the specific law under which the action is brought might preclude the use of such a damage distribution device. The California Supreme Court has said, "Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 462 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) The instant class action alleges a cause of action under the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.), the state antitrust law. We must therefore decide whether the Cartwright Act permits fluid class recovery. We conclude that it does.

To support their contention that the Cartwright Act does not allow fluid class recovery, the supermarkets focus primarily on that section of the act which authorizes private antitrust actions. Business and Professions Code section 16750, subdivision (a) provides in part, "Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor ... and to recover three times the damages sustained by him ...." It is asserted that since fluid class recovery will inevitably lead to the distribution of damages to some people who were not injured in their business or property, it would contravene the statute by allowing the recovery of damages by persons who had sustained no damages.

A recovery of damages by someone who has not sustained damages is clearly contrary to the Cartwright Act, but the use of fluid class recovery will not produce such a result. The supermarkets misinterpret the meaning of the phrase "recover damages." The recovery of damages ordinarily means the recovery of a judgment, not the payment of money. (*Westinghouse Electric Co.* v. *Chambers* (1915) 169 Cal. 131, 139-140 [145 P. 1025], disapproved on other grounds in *Mandel* v. *Myers*

(1981) 29 Cal.3d 531, 551, fn. 9 [174 Cal.Rptr. 841, 629 P.2d 935]; *Rowe* v. *Holmes* (1944) 63 Cal.App.2d 46, 49 [146 Cal.Rptr. 45]; *Ferris* v. *Independence Indemnity Co.* (1932) 124 Cal.App. 154, 157 [12 P.2d 148]; *Cordes* v. *Harding* (1915) 27 Cal.App. 474, 479 [150 P. 650].)[6] Thus, in a class action under Business and Professions Code section 16750, subdivision (a), damages are *recovered* as soon as the judgment is entered in favor of the plaintiff class, not when the money is distributed. The only persons who will recover damages, therefore, are the members of the plaintiff class; and assuming that proper procedures were used in certifying the class, finding liability, and calculating the amount of damage done the class members by the defendant, those persons will have been injured in their business or property and will be recovering damages which they sustained. That the recovered damages may later be *distributed* to some noninjured people is not proscribed by section 16750, subdivision (a).[7]

The supermarkets direct our attention to several federal cases which interpret the federal antitrust laws as precluding fluid class recovery. (*Windham* v. *American Brands, Inc., supra,* 565 F.2d 59, 65-66; *In re Hotel Telephone Charges, supra,* 500 F.2d 86; *Eisen* v. *Carlisle & Jacquelin, supra,* 479 F.2d 1005, vacated on other grounds (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140]; but see *In re Antibiotic Antitrust Actions* (S.D.N.Y. 1971) 333 F.Supp. 278.) Interpretations of the federal antitrust laws are of relevance to Cartwright Act problems (*Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 925 [130 Cal.Rptr. 1, 549 P.2d 833]), but we respectfully exercise our prerogative to disagree with the cited cases.

The *Windham, Hotel Telephone,* and *Eisen* cases base their holdings on the theory that the only goal of private antitrust actions is compen-

---

[6]Indeed, the very labeling of the distribution schemes considered here as types of a "fluid class *recovery*" is unfortunately imprecise. A more accurate name would be "fluid class *distribution*," since what we are concerned with is the method of paying out damages after they have been recovered.

[7]That the Legislature recognizes the distinction between the recovery and the distribution of damages is clear from an examination of a 1977 amendment to the Cartwright Act, which amendment will be more fully discussed *infra.* Section 16760 of the Business and Professions Code was added to authorize the Attorney General or a district attorney to bring an action as *parens patriae,* on behalf of people injured by an antitrust violation. Unlike for private antitrust actions, the methods for apportioning the money obtained in a successful *parens patriae* lawsuit is specified by statute. Preceding the list of those methods, section 16760, subdivision (e) states, "Monetary relief *recovered* by the Attorney General under this section shall be *distributed* as follows ...." (Italics added.)

sation of injured individuals. Thus, the cases state, allowing noninjured persons to be paid would usurp legislative power by judicially altering substantive rights and liabilities under the antitrust statutes. (See also Landers, *supra*, 47 So.Cal.L.Rev. 842, 868-872; Handler, *Twenty-Fourth Annual Antitrust Review* (1972) 72 Colum.L.Rev. 1, 34-42.) We see two major flaws in this reasoning.

■ First, although compensation is the primary rationale for the allowance of private antitrust lawsuits, the prevention and punishment of anticompetitive acts is a not insignificant purpose of antitrust laws. (See, e.g., *Zenith Corp.* v. *Hazeltine* (1969) 395 U.S. 100, 130-131 [23 L.Ed.2d 129, 152-153, 89 S.Ct. 1562]; *Lehrman* v. *Gulf Oil Corporation* (5th Cir. 1974) 500 F.2d 659, 667, cert. den. (1975) 420 U.S. 929 [43 L.Ed.2d 400, 95 S.Ct. 1128]; *Karseal Corporation* v. *Richfield Oil Corporation* (9th Cir. 1955) 221 F.2d 358, 365.) Recently, in holding that consumers can sustain injuries in their "business and property" within the meaning of section 4 of the Clayton Act (15 U.S.C. § 15), the statute after which Business and Professions Code section 16750, subdivision (a) is patterned, Chief Justice Burger wrote for the Supreme Court that "Congress created the treble-damages remedy of § 4 precisely for the purpose of encouraging *private* challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations." (*Reiter* v. *Sonotone Corp.* (1979) 442 U.S. 330, 344 [60 L.Ed.2d 931, 941, 99 S.Ct. 2326] original italics.) Prohibiting fluid class recovery distribution methods, however, would curtail the legislatively intended deterrent effect of the private antitrust lawsuit.

Second, fluid class recovery can, in appropriate cases, serve a substantial compensatory function. When there is significant correlation or overlap between the injured class and the class to be benefited by the distribution of damages, not only will many persons be compensated for actual harm done to them by a defendant's antitrust violation, but most of those injured persons will be receiving compensation where absent a fluid class recovery they would get nothing, because of the unlikelihood that they will be capable of proving their individual claims.

Those who would bar fluid class recovery in private antitrust actions take the position that no damages can be recovered unless they are to be distributed *only* to those who suffered injury and *only* in the amount that each person was injured. The antitrust laws, however, exhibit no

requirement for such precision in compensation. If damages are distributed so as to substantially compensate the injured class members who have recovered the damages, and especially if that distribution serves to deter violations and disgorge illegal profits, the letter and spirit of the antitrust laws will have been obeyed.

Finally, the supermarkets contend that the 1977 amendment of the Cartwright Act demonstrates a legislative intent to limit fluid class recovery to *parens patriae* actions brought by the Attorney General or a district attorney. Section 16760, subdivision (a)(1) of the Business and Professions Code was enacted to authorize such an action to be brought "on behalf of natural persons residing in the state ... to secure monetary relief ... for injury sustained by such natural persons to their property by reason of any violation of this chapter [the Cartwright Act]." Section 16760, subdivision (e) states how the "[m]onetary relief recovered ... shall be distributed ...." Each person is to be allowed "a reasonable opportunity to secure his appropriate portion of the monetary relief," and the costs and attorney's fees awarded by the court are to be deposited in the Attorney General antitrust account. Any residue is treated as unclaimed property which may escheat to the state.[8]

The fact that the law empowers the Attorney General and district attorneys to bring *parens patriae* antitrust lawsuits and specifies the methods for distributing the damages they recover evidences no legislative intent to prohibit fluid class recovery in private antitrust class actions. The supermarkets' theory, apparently, is that by making a certain type of relief available to the state's law enforcers, the Legislature has recognized the unavailability of that relief to private plaintiffs. Even were we to accept this theory of statutory construction, it would not be of assistance to the supermarkets here. The most reasonable in-

---

[8]Section 16760, subdivision (e) reads in full: "Monetary relief recovered by the Attorney General under this section shall be distributed as follows:

"(1) In such manner as the superior court having jurisdiction over the action in its discretion may authorize to insure, to the extent possible, that each person be afforded a reasonable opportunity to secure his appropriate portion of the monetary relief.

"(2) The Attorney General shall retain that portion of the monetary relief awarded by the court as costs of suit and attorney's fee for deposit in the Attorney General Antitrust Account within the General Fund.

"(3) To the extent that the monetary relief awarded by the court is not exhausted by distribution under paragraphs (1) and (2), the remaining funds shall be treated under the provisions of Article 3 (commencing with Section 1530) and Article 4 (commencing with Section 1540) of Chapter 7 of Title 10 of Part 3 of the Code of Civil Procedure as if it were unclaimed property, as defined in Section 1300 of the Code of Civil Procedure."

terpretation of section 16760, subdivision (e) is that the Legislature has sanctioned the use of a civil action by the Attorney General and district attorneys to enforce the Cartwright Act regardless of the compensatory effect of the action. This is so because, conceivably, all of the monetary relief awarded, save the attorney's fees and costs, could escheat to the state without any payment to the injured persons. Under the supermarkets' theory, the Legislature has thus proscribed private actions that serve no compensatory purpose. This conclusion is not inconsistent with our opinion, because as has already been demonstrated, for the Cartwright Act to be followed, any fluid class recovery in a private class action must serve a substantial compensatory function.

The supermarkets' attempt to bolster their argument by citing the legislative history of the 1976 federal Clayton Act amendments, upon which the 1977 Cartwright Act amendment was modeled. We find the legislative history inconclusive to establish the congressional intent with respect to the legality of fluid class recovery in private antitrust lawsuits. But, more importantly, the amendments of the Clayton and Cartwright Acts are sufficiently different that an independent interpretation of the two is required on this issue.[9] Thus, the federal legislative history does not alter our holding that section 16760, subdivision (e) is not a statement of legislative intent to prohibit fluid class recovery in private antitrust lawsuits.

[9]Under the Clayton Act, if the defendant has been found to have agreed to unlawfully fix prices, the amount of damages may be proved and assessed in the aggregate "without the necessity of separately proving the individual claim of, or amount of damage to, persons on whose behalf the suit was brought." Such damage calculation methods, however, are restricted to *parens patriae* actions brought by a state attorney general. (15 U.S.C. §§ 15d, 15c(a)(1).) Using very similar language, the Cartwright Act also permits aggregate damage calculation in price fixing cases, but expressly allows that calculation to be made "[i]n any action under this *chapter* [the entire Cartwright Act]." (Bus. & Prof. Code, § 16760, subd. (d), italics added.) Thus, in private class actions such as the present case, aggregate damage calculation is expressly permitted under the Cartwright Act, whereas it is not authorized under the Clayton Act.

There is also a material difference between the amendments of the two acts concerning the distribution of damages in *parens patriae* actions. As has already been discussed, the Cartwright Act requires that any money left over after each person has had a reasonable opportunity to secure his appropriate portion of the monetary relief must be treated as unclaimed property. (Bus. & Prof. Code, § 16760, subd. (e).) Under the Clayton Act, however, subject to the requirement that each person have a reasonable opportunity to secure his appropriate portion, the monetary relief shall "(1) be distributed in such manner as the district court in its discretion may authorize; or [¶] (2) be deemed a civil penalty by the court and deposited with the State as general revenues . . . ." (15 U.S.C. § 15e.) It therefore appears that a federal trial judge has more latitude in distributing damages in *parens patriae* suits than does a California trial judge.

In sum, a private class action with a fluid class recovery does not alter the substantive law of the Cartwright Act. It does not give a cause of action to anyone without a right to recover damages; instead it makes available a way to exercise that right to people who otherwise would have no practicable means of doing so. This is not changing substantive law to accommodate procedure, but using an innovative procedure to fully effectuate the substantive law.

## IV

Since we hold that fluid class recovery is not prohibited in Cartwright Act class actions and the trial court has yet to consider the propriety of fluid class recovery under the facts of this case, the distribution devices requested by petitioners should not have been stricken from their complaint.[10] We direct that a peremptory writ of mandate issue requiring the respondent superior court to vacate its order dated June 10, 1981, granting real parties' motion to strike, and that a new order be entered denying the said motion.

Kaufman, Acting P. J., and Tamura, J.,* concurred.

A petition for a rehearing was denied January 19, 1982.

---

[10]The supermarkets request that we find fluid class recovery improper in this particular case, because, they claim, the "correlation" or "overlap" between those injured and those to be benefited will be minimal. This argument is best addressed to the trial court when it considers whether this lawsuit may be maintained as a class action. *Daar, Vasquez* and *Blue Chip Stamps* all treat damages distribution as but one of several factors that must be weighed and balanced to determine the correctness of maintaining a class action. As the supermarkets themselves argue (albeit as a reason against our issuing an extraordinary writ), "To review one facet of the class certification questions, in isolation from all other factors that will ultimately have a bearing on the outcome, would result in an unsatisfactory, piecemeal review." For this reason, we cannot now decide whether fluid class recovery is appropriate in this case. We hold only that it is not per se inappropriate in cases of this type.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.