[No. A097495. First Dist., Div. Two. Aug. 27, 2002.]

THOMAS CORBETT, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
BANK OF AMERICA, N.A., et al., Real Parties in Interest.

## COUNSEL

Law Offices of Sharon Kinsey, Sharon L. Kinsey, Amanda K. Wilson; McGehee & Pianelli, Jack E. McGehee; and Brad Seligman for Petitioner.

Robinson, Calcagnie & Robinson and Sharon J. Arkin for California Consumer Health Care Council and Health Administration Responsibility Project as Amicus Curiae on behalf of Petitioner.

The Sturdevant Law Firm and James C. Sturdevant for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioner.

Saperstein, Goldstein, Demchak & Baller and Laura L. Ho as Amici Curiae on behalf of Petitioner.

Van Bourg, Weinberg, Roger & Rosenfeld and Ellyn Moscowitz for District Council of Iron Workers, Northern California Carpenters Regional Council, Roofers Local 81, United Assoication Local 483, United Association Local 709, International Brotherhood of Electrical Workers Local 11 and Painters District Council 36 as Amici Curiae on behalf of Petitioner.

Michael Rawson for Public Interest Law Project as Amicus Curiae on behalf of Petitioner.

Milberg Weiss Bershad Hynes & Lerach and William S. Dato as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Steefel, Levitt & Weiss, Barry W. Lee, Andrea Hackett Henningsen and Chad D. Bernard for Real Party in Interest Bank of America, N.A.

Christa & Jackson, Laura K. Christa and Laurence Jackson for Real Party in Interest Hayward Dodge, Inc.

## OPINION

**LAMBDEN, J.**—In the case before us, Thomas Corbett (Corbett) filed his petition for extraordinary relief challenging the trial court's conclusion, as a

matter of law, that it could not certify a class to pursue a claim for violating the unfair competition law (UCL), Business and Professions Code section 17200 et seq.[1] The court struck the portion of Corbett's pleading against Bank of America, N.A., Bancamerica Auto Finance Corporation, Bank of America Corporation (collectively Bank of America), and Hayward Dodge, Inc. (Hayward Dodge) for disgorgement of unlawful profits into a fluid recovery fund.

Although numerous courts have presumed they have the authority to certify UCL claims as class actions[2] and reviewing courts have considered what factors must be considered when certifying a class in a UCL lawsuit (e.g., *Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 454 [153 Cal.Rptr. 28, 591 P.2d 51] (*Fletcher*)), no appellate court has directly addressed the question of whether UCL and class actions are fundamentally incompatible. The question before us is therefore one of first impression. Bank of America and Hayward Dodge, however, maintain that the Supreme Court in *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 137 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*) already settled this question when it concluded that "section 17203 does not authorize orders for disgorgement into a fluid recovery fund."

We do not agree that *Kraus* holds that class actions and UCL claims are mutually exclusive. The Supreme Court in *Kraus* made it clear that the question before it was whether a fluid recovery remedy, which it had "sanctioned" only in class actions, was also authorized by the UCL. (*Kraus, supra,* 23 Cal.4th at p. 127.) The court concluded that "the Legislature has not expressly authorized monetary relief other than restitution in UCL actions, but has authorized disgorgement into a fluid recovery fund in class actions." (*Id.* at p. 137.) Thus, its holding barred a liquid recovery remedy in non-class UCL actions and did not address class UCL actions.

The interpretation of *Kraus* advocated by Hayward Dodge and Bank of America would have required the Supreme Court to disapprove of its earlier

---

[1] All further unspecified code sections refer to the Business and Professions Code.

[2] For example, Judge Charles R. Hayes at the Superior Court of San Diego County certified a UCL claim as a class action, and the Fourth District affirmed in *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282 [119 Cal.Rptr.2d 190] (*Mass. Mutual*). In addition, a leading treatise on the UCL contains a section entitled "True Class Actions Are Permissible Under §17200[.]" (Stern, Unfair Business Practices and False Advertising Bus. & Prof. Code § 17200 (The Rutter Group 2000) ¶ 7.28, p. 218.) Under this section, it explains that the class action department of the Superior Court of Los Angeles County distributes a flyer containing the following: " 'Class certification is not necessary to obtain collective restitution and injunctive relief for absent persons, assuming due process is satisfied. Class certification may not be "superior" in an action to obtain only those remedies[.]' " (*Id.* at ¶ 7.29, p. 218.)

opinion in *Fletcher.* In *Fletcher,* the Supreme Court implicitly ruled that a UCL claim could properly be brought as a class action when it held that the trial court improperly rejected class certification of a UCL claim because plaintiffs could not prove that each individual borrower lacked knowledge of the bank's unfair practice. (*Fletcher, supra,* 23 Cal.3d at p. 453.) Not only did the Supreme Court in *Kraus* quote approvingly from *Fletcher,* but it pointed out that it had already *held* in *Fletcher* that "once an unfair trade practice was established, a *class action could proceed* without individualized proof of lack of knowledge of the fraud." (*Kraus, supra,* 23 Cal.4th at p. 134, italics added, citing *Fletcher, supra,* 23 Cal.3d at p. 450.)

In addition to the language in *Kraus* approving of class UCL claims, nothing in the language of the UCL or in its legislative history suggests that UCL claims and class actions are incompatible. Despite numerous modifications to the UCL, the Legislature has never added language barring class actions. Furthermore, section 17205 expressly provides that the remedies under the UCL "are cumulative to each other and to the remedies or penalties available under all other laws of this state." Consequently, a plaintiff in a class UCL action is expressly entitled to an injunction and restitution, authorized under the UCL, and to disgorgement into a fluid recovery, as authorized under the class action statutes.

Finally, public policy also compels us to reject the argument of Hayward Dodge and Bank of America. Refusing to ever permit a liquid recovery in a UCL claim would thwart the purpose of the UCL because it would permit defendants to keep a portion of their illicit profits (see, e.g., *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545]). If a plaintiff in a UCL action was precluded from seeking disgorgement into a fluid recovery, those ill-gotten profits that could not be returned to identifiable injured or deceived parties would be retained by the defendants. This would " 'impair the full impact of the deterrent force that is essential if adequate enforcement' " of the UCL is to be achieved. (*Fletcher, supra,* 23 Cal.3d at p. 451.)

Accordingly, we hold that UCL claims and class actions are not mutually exclusive as matter of law. Where a class has properly been certified, a plaintiff in a UCL action may seek disgorgement of unlawful profits into a fluid recovery fund.

## BACKGROUND

On April 17, 2000, Corbett, individually and on behalf of all others similarly situated, filed a class action complaint for damages and for an

injunction against Bank of America and Hayward Dodge. On August 27, 2001, the court denied without prejudice Corbett's motion for class certification for failure to set forth evidence in support of his motion.

On August 30, 2001, Corbett filed a third amended complaint and alleged that he purchased a motor vehicle under a five-year simple interest motor vehicle installment contract and security interest, financed by Bank of America. According to the pleading, Hayward Dodge arranged the financing. Corbett was unaware that Bank of America had approved his loan application at an interest rate of approximately 12.50 percent, but Hayward Dodge prepared the loan documents for an interest rate of 17.50 percent. Bank of America and Hayward Dodge shared the difference between the interest rate approved and the interest rate charged. Neither Bank of America nor Hayward Dodge disclosed any of this information to the consumer. Corbett alleged on behalf of himself and all other consumers who had similarly been harmed by this deceptive and misleading business practice causes of action for violating the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), fraud, intentional interference with prospective contract, permanent injunction under Civil Code section 1780, subdivision (a)(2), and violating the UCL (§ 17200 et seq.).

On September 19, 2001, Hayward Dodge filed a motion to, among other things, strike Corbett's "allegations seeking disgorgement of ill-gotten gains and profits, as that relief is not recoverable under the unfair competition statutes." On November 8, 2001, the court granted the motion to strike the prayer for disgorgement relief related to the claim under section 17200. The court stated: "Motion of Hayward Dodge to strike the prayer for disgorgement relief related to the 5th cause of action under Business and Professions Code 17200 is GRANTED. Kraus v. Trinity Management Services, Inc.[, *supra*,] 23 Cal.4th 116, 138, holds that disgorgement is not a remedy in and of itself. Rather, Kraus holds that disgorgement of allegedly ill-gotten profits is a remedy only insofar as it [is] a mechanism to permit restitution of funds. Business and Professions Code 17203 (Court may enter orders as may be necessary 'to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.') This does not preclude the possibility of an order for restitution of improper interest charges to affected borrowers on a borrower by borrower basis or the use of disgorgement as a mechanism to effect restitution. [¶] Plaintiffs' argument that they may obtain disgorgement relief under Business and Professions Code 17200 because that claim is plead as a class action is misplaced. Plaintiffs cannot, as a matter of law, certify a class to pursue [a claim under sections 17200 and 17500]. There is a distinction between bringing a claim in a representative capacity and bringing a claim on behalf

of a class. . . ." The court cited *Kraus, supra,* 23 Cal.4th at page 137, and stated that the *Kraus* court noted that the Legislature is aware of the distinction between representative and class actions. The court continued: "Claims under [section] 17200 are defined by statute as representative claims. . . . These representative claims can seek equitable relief to remedy unlawful business acts, but they are not direct claims seeking damages for the alleged unlawful business acts. A plaintiff can pursue a class action asserting a direct claim to obtain damages for the same alleged unlawful business acts for him or herself and all other persons who are similarly situated, but that direct claim is not the same as the claim under [section] 17200. The Court cannot, as a matter of law, certify a class to pursue a claim under [section] 17200. . . ."

On November 26, 2001, Corbett filed a renewed motion for class certification on all of his causes of action except for his UCL claim. On December 24, 2001, Judge Ronald M. Sabraw denied this motion on grounds that the class was not ascertainable, individual issues predominated over common issues, and Corbett was not typical of the putative class.

Corbett filed a petition for peremptory writ of mandate from the November 8, 2001 order finding, as a matter of law, that he could not pursue a class action for violating the UCL. We issued an order to show cause.

## DISCUSSION

Although courts generally deny writ relief (e.g., *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1100 [46 Cal.Rptr.2d 332]; *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1272 [258 Cal.Rptr. 66]), a writ of mandate *should* not be denied when "the issues presented are of great public importance and must be resolved promptly." (*County of Sacramento v. Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].) Clearly these criteria are present here. Our receipt of numerous amicus curiae briefs underscores the importance of this issue. In addition, a conflict currently exists among trial courts. Judge Sabraw, the designated complex litigation judge for Alameda County, has ruled that UCL claims and class actions are mutually exclusive, while Judge Charles R. Hayes at the Superior Court of San Diego County has certified UCL claims for class action. (See, e.g., *Mass. Mutual, supra,* 97 Cal.App.4th 1282; see also fn. 2 *ante.*) Judicial economy therefore requires a prompt resolution of this controversy.

### I. *Corbett's UCL Claim*

Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

misleading advertising . . . ." The question before us is whether the trial court erred in striking the request for disgorgement relief and in finding that an unfair competition claim cannot be pursued as a class action as a matter of law. If the court erred, Corbett should be permitted to apply for class certification for the UCL claim and add the disgorgement language to the pleading. To determine the answer to this question we examine the prior case law on this issue, the legislative history and purpose of UCL claims and class actions, the omission of any language expressly permitting class actions in the UCL, and differences in proof and procedure between the UCL and class actions.

We emphasize that there is absolutely no dispute that a UCL claim is procedurally distinct from a class action and that the two have different purposes. However, the mere fact that they differ does not mandate a conclusion that they are incompatible. In fact, as we discuss *infra,* under the proper circumstances set forth in Code of Civil Procedure section 382,[3] certifying a UCL claim as a class action furthers the purposes and goals underlying both of these actions.

■ When reviewing an order granting or denying class certification, we reverse if the order is based upon improper criteria or incorrect legal assumptions " ' "even though there may be substantial evidence to support the court's order." ' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436, 448 [97 Cal.Rptr.2d 179, 2 P.3d 27].) "In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial." (*Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 829 [97 Cal.Rptr.2d 226].) ■ If the trial court's ruling that the UCL claim could not be maintained as a class action as a matter of law is legally flawed, no other basis remains for sustaining the court's ruling.

A. *Case Law Regarding Class Certification and UCL Claims*

The most recent Supreme Court case to address the question of whether a UCL claim may be maintained as a class action is *Kraus, supra,* 23 Cal.4th 116. Corbett argues that the Supreme Court in *Kraus* implicitly approved of a class action for UCL claims whereas Hayward Dodge and Bank of America contend that the *Kraus* court recognized the separate, and irreconcilable, procedures created by the Legislature for a class action (Code Civ. Proc., § 382) and UCL claim (§ 17200 et seq.).

---

[3]Code of Civil Procedure section 382 provides: "If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

In *Kraus, supra,* 23 Cal.4th at pages 121-122, six former tenants brought a number of claims, including one under the UCL, on behalf of themselves and absent persons, for the disgorgement into a fluid recovery fund, the illegal nonrefundable security and administrative fees collected by the owners and property managers of residential rental properties. They did not seek certification of their UCL claim as a class action. (*Id.* at p. 121.) The Supreme Court explained that implementing a fluid recovery involves three steps: " ' "First, the defendant's total damage liability is paid over to a class fund. Second, individual class members are afforded an opportunity to collect their individual shares by proving their particular damages, usually according to a lowered standard of proof. Third, any residue remaining after individual claims have been paid is distributed by one of several practical procedures that have been developed by the courts." ' " (*Id.* at p. 127.)

The *Kraus* court stated that the Legislature had not expressly authorized a fluid recovery in UCL actions. (*Kraus, supra,* 23 Cal.4th at pp. 129-137.) Section 17203 provides the remedy for UCL actions and it expressly authorizes only restitution as the monetary remedy. After reviewing the statutory history of the UCL, the Supreme Court stated that it had found nothing to suggest that the Legislature intended to authorize a fluid recovery in representative UCL actions when it made the power to order restitution statutory. (*Kraus, supra,* at p. 132.) The court declared that section 17203 does not authorize disgorgement into a fluid recovery, and "[a]uthority to order fluid recovery has its source in the powers of the court when presiding over a class action, as now expressly confirmed in Code of Civil Procedure section 384." (*Kraus, supra,* at p. 133.) The court held: "[R]eading section 17203 as permitting orders for disgorgement into a fluid recovery fund would be inconsistent with the Legislature's decision to expressly authorize fluid recovery in class actions and to provide that Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) suits on behalf of the plaintiff and other similarly situated consumers may be brought as class actions, not representative actions, while failing to authorize fluid recovery in representative UCL actions." (*Kraus, supra,* at p. 137.) Further, the court stressed: "In sum, the Legislature has not expressly authorized monetary relief other than restitution in UCL actions, but has authorized disgorgement into a fluid recovery fund in class actions. Although the Legislature is well aware of the distinction between class actions and representative actions, it has not done so for representative UCL actions. Inasmuch as the Legislature has spoken, any further extension of the fluid recovery remedy should come from the Legislature, not, as the dissent argues, from this court." (*Ibid.*)

Although the Supreme Court in *Kraus* stressed that the Legislature expressly authorized fluid recoveries for class actions and did not do so for

the UCL, the court did not suggest that fluid recoveries could *never* be a remedy in a UCL action; that action was not presented. Rather, it indicated that courts retained the authority to order liquid remedies pursuant to Code of Civil Procedure section 384 when the plaintiffs had certified the UCL claim as a class action pursuant to Code of Civil Procedure section 382. The *Kraus* court added: "Therefore, we decline to read the grant of equitable power in section 17203 as encompassing the authority to fashion a fluid recovery remedy *when the action has not been certified as class action.*" (*Kraus, supra,* Cal.4th at p. 137, italics added.) The court further explained that allowing a fluid recovery in representative UCL actions, when the action has not been certified as a class action, may implicate due process concerns and may not serve the public because judicial supervision of a class action is greater than that of a representative UCL action. (*Ibid.*)

We conclude that the *Kraus* court recognized the procedural and statutory differences between representative and class actions but did not hold, as the trial court ruled, that a representative action is necessarily incompatible with a class action. Our interpretation of the majority's opinion finds further support in Justice Werdegar's concurrence and dissent in *Kraus*. She disagreed with the majority's holding to the extent it barred a liquid recovery for private, uncertified UCL actions, because UCL actions are *often* formally incompatible with class treatment. (*Kraus, supra,* 23 Cal.4th at p. 147 (conc. & dis. opn. of Werdegar, J.).) Her concern was not that the majority's holding foreclosed the availability of a liquid recovery in *all* UCL actions, but that it would never be available "in a critical class of UCL actions—those brought by personally unaggrieved plaintiffs." (*Id.* at pp. 147-148.)

Prior to *Kraus*, the Supreme Court addressed in *Fletcher, supra,* 23 Cal.3d 442 the question of the compatibility of a class action and a UCL claim. In *Fletcher*, bank customers in a class action sought restitution under the UCL because the bank had computed the per annum interest rates on the basis of a 360-day year separately for each loan. (*Id.* at p. 445.) The court held that the lower court had used the improper basis in refusing to certify the suit, and noted that the trial court could "determine in subsequent proceedings that the maintenance of the present suit as a class action is precluded on other grounds." (*Id.* at p. 453.) The following statement indicates that the court did not consider class actions and representative actions under the UCL fundamentally incompatible: "Although an individual action may eliminate the potentially significant expense of pretrial certification and notice, and thus may frequently be a preferable procedure to a class action, *the trial court may conclude that the adequacy of representation of all allegedly injured borrowers would best be assured if the case proceeded as a class action.* Before exercising its discretion, the trial court must carefully

weigh both the advantages and disadvantages of an individual action against the burdens and benefits of a class proceeding for the underlying suit." (*Id.* at p. 454, italics added.)

Bank of America attempts to dismiss *Fletcher, supra,* 23 Cal.3d 442, and the other cases that predate *Kraus,* by arguing that *Kraus* disagreed with them and therefore essentially overruled them. *Kraus* did not overrule *Fletcher.* To the contrary, the *Kraus* opinion quoted extensively from and relied on *Fletcher* and expressly stated that it had *already held* in *Fletcher* that a UCL claim could proceed as a class action. In discussing *Fletcher*, the *Kraus* court stated: "We distinguished a UCL claim from claims based on breach of contract or fraud [in *Fletcher*], and *held* that once an unfair trade practice was established, a class action *could proceed* without individualized proof of lack of knowledge of the fraud." (*Kraus, supra,* 23 Cal.4th at p. 134, italics added, citing *Fletcher, supra,* 23 Cal.3d at p. 450.) Similarly, the Supreme Court in *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 582, footnote 3 [71 Cal.Rptr.2d 731, 950 P.2d 1086] stated: "*Fletcher* was brought as a class action. We stated there that the court might order restitution to the class or, if the class action was precluded, relief ancillary to an injunction. (23 Cal.3d at pp. 453-454.)"

In a case decided after *Fletcher,* and shortly before *Kraus,* the Supreme Court in *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual*) again appears to recognize the appropriateness of UCL class actions. In *Washington Mutual,* the trial court had certified a nationwide class action against a bank; the Supreme Court reversed because the court had failed to resolve choice-of-law issues and the impact of applying different states' laws on the unfair business practices claim. (*Washington Mutual, supra,* p. 927.) The court stated: "Without expressing any views on this dispute, we note that, *if* the trial court were to determine that the claims of out-of-state residents must be resolved under the unfair business practices laws of their own states, instead of California's UCL, then at present such claims appear to be outside the scope of [the plaintiff's] complaint." (*Id.* at p. 928, fn. 13.) The court cautioned that it had not considered all of the issues involved with a nationwide class action certification: "For example, determinations regarding the applicable law may affect issues other than predominance and manageability, such as whether the representative plaintiffs have claims or defenses typical of those of the class or whether the representative plaintiffs can fairly and adequately protect the interests of the entire class." (*Id.* at pp. 928-929.) The Supreme Court never proposed that the plaintiffs may be precluded from pursuing the UCL claim as a class action as a matter of law; rather, it held that the trial court must consider the factors set forth in Code

of Civil Procedure section 382 when determining the appropriateness of class certification.

Similarly, without directly addressing whether UCL suits may be brought as class actions, several Court of Appeal decisions have presumed or implied that plaintiffs may bring UCL claims as class actions in appropriate cases. In *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 773 [259 Cal.Rptr. 789] (*Dean Witter*), our division held that the lower court abused its discretion by permitting the UCL action to proceed by class action when the plaintiffs had not established that class treatment was demonstrably superior to an individual, representative action. The court explained: "The suitability of the unfair competition claims for class action treatment must be tested by principles developed under the general class action statute, Code of Civil Procedure section 382." (*Dean Witter, supra,* at p. 772, fn. omitted.) Citing both *Dean Witter* and *Fletcher*, the Fifth District in *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 720 [262 Cal.Rptr. 899] reversed a judgment that awarded restitution awards under UCL to growers who were not parties to the action. The court suggested that, because judgments in unfair business actions are not binding as to nonparties, it may be improper to maintain an individual, representative action for unfair competition outside the confines of a class action. (*Ibid.*) In *Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214, 229 [85 Cal.Rptr.2d 18], the Fourth District reversed an order certifying a nationwide class in a pleading that included a UCL claim, because nonresidents of California could not assert UCL claims. The court, however, specifically stated that it was reversing the certification order without prejudice, and plaintiffs could move to certify a new class to pursue this claim. (*Ibid.*) In *Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1039 [111 Cal.Rptr.2d 260], the court held that prior UCL actions successfully prosecuted by the Attorney General and the Los Angeles County District Attorney did not bar a *UCL class action* by 23 plaintiffs who received no restitution or monetary relief in the actions brought on behalf of the People. The court held that res judicata did not apply even though the class action was premised on the same conduct litigated by the Attorney General and the Los Angeles County District Attorney. (*Ibid.*)

Most recently, the Fourth District considered a claim that the trial court improperly certified a class action in a case alleging that the defendant had violated the UCL and the Consumer Legal Remedies Act. (*Mass. Mutual, supra,* 97 Cal.App.4th 1282.) The defendant in *Mass. Mutual* did not assert that a UCL claim could not be maintained as a class action, but argued only that a class could not be certified in that case because the plaintiff failed to satisfy the requirements of Code of Civil Procedure section 382. (*Mass.*

*Mutual, supra,* at p. 1287.) The Court of Appeal affirmed the lower court and held that the "plaintiffs' UCL claim presents common legal and factual issues which were *plainly suitable for treatment as a class action.*" (*Id.* at p. 1292, italics added.)

We conclude that a trial court may certify a UCL claim as a class action when the statutory requirements of section 382 of the Code of Civil Procedure are met.

### B. *Legislative History and Purpose of UCL and Class Actions*

Hayward Dodge and Bank of America contend that the purpose of the UCL, which is brought on behalf of the public (§ 17204[4]; see also *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17 [141 Cal.Rptr. 20, 569 P.2d 125]), is distinct from that of a class action, which is brought on behalf of private litigants. They maintain that our Supreme Court in *Fletcher* has recognized this distinction and has emphasized that these two separate mechanisms are each to be given their separate effect. (See *Kraus, supra,* 23 Cal.4th at p. 137.) A brief review of the legislative history of the statutes governing the UCL and class actions reveals that their procedural histories are distinct, but not incompatible.

### 1. *The UCL*

Our Supreme Court set forth the legislative history of the UCL in *Kraus, supra,* 23 Cal.4th at pages 129-131, which we briefly summarize here. Former Civil Code section 3369, enacted in 1872, provided: " 'Neither specific nor preventive relief can be granted to enforce a penal law, except in a case of nuisance, nor to enforce a penalty or forfeiture in any case.' " The Legislature amended the statute in 1933 to retain the original provision and added an unfair competition exception to the limit on injunctive relief, which became subdivision 1, and express authority to enjoin unfair competition, which became subdivision 2. (*Kraus, supra,* at pp. 129-130.) Subdivision 3 defined unfair competition as an " 'unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Penal

---

[4]Section 17204 provides: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

Code sections 654a, 654b or 654c.' " (*Kraus, supra,* at p. 130, citing Stats. 1933, ch. 953, § 1, p. 2482.) "Subdivision 5 included a person acting in the interest of the general public among the persons authorized to bring an action for an injunction." (*Kraus, supra,* at p. 130, citing Stats. 1933, ch. 953, § 1, p. 2482.) Primarily used by public prosecutors until 1972, the Supreme Court in *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817] confirmed that private plaintiffs could use the unfair competition law for injunctive relief.

The Legislature amended Civil Code section 3369 in 1976 (Stats. 1976, ch. 1005, § 1, p. 2378) to provide the courts with authority to order restitution. (*Kraus, supra,* 23 Cal.4th at p. 130.) The following year, the Legislature removed the unfair competition law from Civil Code section 3369 and placed it in the Business and Professions Code (Stats. 1977, ch. 299, §§ 1, 2, pp. 1202-1203). Section 17203 provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

Thus, the express language and history of section 17203 limited the relief available to restitution and injunctions. As discussed *ante,* the majority in *Kraus* held that nothing in the statutory history or language permitted a disgorgement into a fluid recovery fund or restitution to any person other than a direct victim of unfair competition. (*Kraus, supra,* 23 Cal.4th at p. 131.)

2. *Liquid Recovery and Class Action*

Probate Code section 15409 expressly authorized the *cy près* concept of putting charitable trust funds to the next best use if the trust purpose could no longer be accomplished.[5] Not until 1981, did California courts in *Bruno v. Superior Court* (1981) 127 Cal.App.3d 120, 123-124 [179 Cal.Rptr. 342]

---

[5]Probate Code section 15409 provides: "(a) On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust. In this case, if necessary to carry out the purposes of the trust, the court may order the trustee to do acts that are not authorized or are forbidden by the trust instrument. [¶] (b) The court shall consider a trust provision restraining transfer of the beneficiary's interest as a factor in making its decision whether to modify or terminate the

(*Bruno*) apply a fluid recovery to class actions. (*Kraus, supra,* 23 Cal.4th at p. 132.) ▮ The *Bruno* court explained the purpose of fluid recovery: "The theory underlying fluid class recovery is that since each class member cannot be compensated exactly for the damage he or she suffered, the best alternative is to pay damages in a way that benefits as many of the class members as possible and in the approximate proportion that each member has been damaged, even though, most probably, some injured class members will receive no compensation and some people not in the class will benefit from the distribution; or, as one commentator states it, 'where funds cannot be delivered precisely to those with primary legal claims, the money should if possible be put to the "next best" use.' [Citation.]" (*Bruno, supra,* at pp. 123-124.)

In 1993, the Legislature enacted former Code of Civil Procedure section 383, which authorized fluid recovery in class actions. (*Kraus, supra,* 23 Cal.4th at p. 132, citing Stats. 1993, ch. 863, § 2, p. 4574; see now Code Civ. Proc., § 384.[6]) "The Legislature did not sanction fluid recovery orders as an equitable power available to the court in other proceedings." (*Kraus, supra,* at p. 132.)

3. *Comparing the Language and the Purpose of the UCL with the Class Action Statute*

▮ Nothing in the legislative history suggests that the Legislature intended to prohibit class certification in connection with unfair competition claims. Indeed, *Kraus* did not suggest that such actions are barred and, as already noted, only declined "to read the grant of equitable power in section 17203 as encompassing the authority to fashion a fluid recovery remedy *when the action has not been certified as class action.*" (*Kraus, supra,* 23 Cal.4th at p. 137, italics added.) As Justice Werdegar pointed out, section 17203 expressly authorizes courts to make such orders " 'necessary to prevent . . . unfair competition . . . *or* as may be necessary to restore to any

---

trust, but the court is not precluded from exercising its discretion to modify or terminate the trust solely because of a restraint on transfer."

[6]Code of Civil Procedure section 384 provides: "(a) It is the intent of the Legislature in enacting this section to ensure that the unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed either to further the purposes of the underlying causes of action, or to promote justice for all Californians. . . . [¶] (b) Except as provided in subdivision (c), prior to the entry of any judgment in a class action established pursuant to Section 382, the court shall determine the total amount that will be payable to all class members, if all class members are paid the amount to which they are entitled pursuant to the judgment. . . . [¶] (c) This section shall not apply to any class action brought against any public entity, . . . . However, this section shall not be construed to abrogate any equitable cy pres remedy which may be available in any class action with regard to all or part of the residue."

person in interest any money or property' (italics added) . . . ." (*Kraus, supra,* at p. 145 (conc. & dis. opn. of Werdegar, J.).) Thus, a liquid recovery may not be expressly authorized, but the language of the UCL did not bar the relief authorized under Code of Civil Procedure section 384. Further, the relief set forth in Code of Civil Procedure section 384 is entirely consistent with the broad provision of section 17203 in the UCL, and may be necessary to achieve the purpose of the UCL in appropriate cases.[7]

Hayward Dodge complains that the remedies under section 17203 should not be expanded and Bank of America cites *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173-174 [96 Cal.Rptr.2d 518, 999 P.2d 706] (*Cortez*) as evidence that the Supreme Court has rejected the notion that a fluid recovery scheme such as disgorgement of profits is compatible with restitution. Bank of America quotes the following: "[T]he trial court may not make an order for disgorgement of all benefits defendant may have received from failing to pay overtime wages. It may only order restitution to persons from whom money or property has been unfairly or unlawfully obtained." (*Id.* at p. 172.) However, Bank of America has conveniently omitted the sentence preceding the quoted section where the *Cortez* court admonishes: "Fluid recovery is not authorized in a UCL action *that is not certified as a class* action. *For that reason* the trial court may not make an order for disgorgement of all benefits . . . ." (*Ibid.*, italics added.) Thus, far from supporting Bank of America's viewpoint, the *Cortez* opinion, again, bolsters the position that a class action may be brought in a UCL claim.

---

[7]The question is not, as the dissent asserts, whether the only monetary relief available in a UCL action is restitution. (Dis. opn., *post,* at p. 678.) That has already been settled in *Kraus, supra,* 23 Cal.4th at pages 137-138. Rather, the question is whether a UCL claim *may* be a class action, which would permit a remedy authorized by the class action statutes. Indeed, although the dissent implies to the contrary, the court in *Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 339 [74 Cal.Rptr.2d 55] does not suggest that a fluid recovery is incompatible with a UCL claim. Rather, it points out that a fluid recovery in a UCL action may be appropriate when the amount the defendant would have received but for the unfairly competitive practice is "objectively measurable." The court explained that in the case before it, which involved deceptive advertising to induce people to purchase prepaid phone cards, there were "no ill-gotten profits to restore. Any amount taken away from respondents for services provided using properly filed tariffs would amount to a rebate. This, as we have seen, is not permitted." (*Ibid.*) The court concluded: "To summarize, the notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep. Because the filed rates charged by respondents are presumptively correct, a consumer who uses a prepaid phone card obtains the full value of what was paid for and therefore has given up nothing, regardless of whether he or she was improperly induced to purchase the card in the first place. Any attempt to calculate a monetary amount to be paid on behalf of those who purchased the cards would necessarily result in a refund or rebate of properly collected fees for services. This would enmesh the court in the rate-setting process and directly contravene the filed rate doctrine. Appellants are not entitled to seek restoration of any money under section 17203." (*Id.* at p. 340.)

The dissent's contention that a fluid recovery is inconsistent with a class UCL claim also relies on Justice Bird's majority opinion in *State of California v. Levi Strauss & Co.* (1986) 41 Cal.3d 460 [224 Cal.Rptr. 605, 715 P.2d 564] (*Levi Strauss*). The *Levi Strauss* court considered the *cy près* doctrine in the class action context *prior* to the enactment of former section 383 of the Code of Civil Procedure, the first statute to authorize fluid recovery in class actions. Thus, it has limited relevance to the issue here, but the opinion's logic supports our conclusion as follows: "The propriety of fluid recovery in a particular case depends upon its usefulness in fulfilling the purposes of the underlying cause of action. . . . [Citations.] Fluid recovery may be essential to ensure that the policies of disgorgement or deterrence are realized. [Citation.] Without fluid recovery, defendants may be permitted to retain ill gotten gains simply because their conduct harmed large numbers of people in small amounts instead of small numbers of people in large amounts." (*Levi Straus, supra,* at p. 472.)

Although the Legislature has only authorized disgorgement into a fluid recovery fund in class actions and in consumer actions under the Consumers Legal Remedies Act (see *Kraus, supra,* 23 Cal.4th at p. 137), this does not mean that class UCL claims cannot include fluid recovery relief. As already stressed, the *Kraus* court does not suggest that the *cy près* doctrine would be barred if the plaintiff were bringing a class UCL claim. Indeed, such a holding would be directly contrary to the Legislature's clear intent, as expressly set forth in section 17205. Section 17205 provides: "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." Accordingly, the statute authorizes relief set forth in other statutes and does not exclude liquid recovery, which is available under another section.

Hayward Dodge and Bank of America maintain that the fact that the UCL contemplates representative actions on behalf of the general public renders it inconsistent with the notion of a class, which is designed to benefit a limited number of individuals. We see nothing in the legislative history, however, indicating that the authorization of representative actions was designed to exclude class actions. In fact, permitting a UCL claim on behalf of the class, when appropriate, would further the purpose of the UCL. When the UCL claim is not brought on behalf of a class and all of the victims of the unfair practice cannot be located, the company engaging in the unfair practice keeps the monies that cannot be returned to the individual victims. Thus, the company retains some of the profits from its unfair practice, and this contravenes the deterrent goal of the UCL.

In a different context, the Supreme Court has already declined to permit defendants to a UCL action to retain their profits gained from their unfair

practices. (*Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1254.) In *Bank of the West,* the Supreme Court refused to allow companies violating the UCL to shift their loss to the insurer because it would permit the company to retain the proceeds of its unlawful conduct. (*Id.* at p. 1267.) The court clarified: "Such a result would be inconsistent with the act's deterrent purpose. . . . ' "[T]o permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." ' " (*Ibid.*)

If, however, the UCL claim is brought as a class action, the total monies to be disgorged can be placed in a fluid recovery fund, thus preventing the company from benefiting from its wrongfully obtained profits. In many UCL actions defendants found to have committed unfair practices can be prevented from retaining wrongfully obtained profits only if the proceeding has been certified as a class action. In this manner, the purpose of a liquid recovery, as described in *Bruno, supra,* 127 Cal.App.3d at pages 123-124, complements and, under the appropriate circumstances, furthers the deterrent purpose of the UCL.

Absent language in the text of the UCL or its legislative history suggesting a UCL claim can never be maintained as a class action or a reason to believe that seeking class certification would obstruct the purpose of the UCL, we decline to impose such a restriction, which would usurp a power that belongs to the Legislature, not the courts.

C. *No Statute Specifically Permits a UCL Class Action*

Hayward Dodge and Bank of America argue that the Legislature did not intend to permit UCL claims, because otherwise it would have specifically provided for it. They contrast the language in section 17204 of the UCL with that in Civil Code section 1752 of the Consumer Legal Remedies Act (CLRA).

Civil Code section 1752 of the CLRA reads: "The provisions of this title are not exclusive. The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law. [¶] Nothing in this title shall limit any other statutory or any common law rights of the Attorney General or any other person to bring class actions. Class actions by consumers brought under the

specific provisions of Chapter 3 (commencing with Section 1770) of this title shall be governed exclusively by the provisions of Chapter 4 (commencing with Section 1780); however, this shall not be construed so as to deprive a consumer of any statutory or common law right to bring a class action without resort to this title. If any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law."

Hayward Dodge and Bank of America argue that no such language authorizing class actions appears in the UCL. Since the Legislature did not include this language when it repeatedly amended the statute, Hayward Dodge maintains that it did not intend to permit class actions for UCL.

This argument, however, ignores one of the probable reasons for the Legislature's specifying the permissibility of a class action in the CLRA. The statutory authorization for class action in the CLRA is unique. Civil Code section 1781[8] governs a class action under the CLRA rather than the more general provision of Code of Civil Procedure section 382. (See, e.g., *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655, fn. 6 [22 Cal.Rptr.2d 419].) ▆▆▆▆ Since the Legislature specifically intended that the Code of Civil Procedure section 384 *not* apply to the CLRA, it had

---

[8]Civil Code section 1781 provides: "(a) Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780. [¶] (b) The court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist: [¶] (1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class. . . . [¶] . . . [¶] (e) The notice required by subdivision (d) shall include the following: [¶] (1) The court will exclude the member notified from the class if he so requests by a specified date. [¶] (2) The judgment, whether favorable or not, will include all members who do not request exclusion. [¶] (3) Any member who does not request exclusion, may, if he desires, enter an appearance through counsel. [¶] (f) A class action shall not be dismissed, settled, or compromised without the approval of the court, and notice of the proposed dismissal, settlement, or compromise shall be given in such manner as the court directs to each member who was given notice pursuant to subdivision (d) and did not request exclusion. [¶] (g) The judgment in a class action shall describe those to whom the notice was directed and who have not requested exclusion and those the court finds to be members of the class. The best possible notice of the judgment shall be given in such manner as the court directs to each member who was personally served with notice pursuant to subdivision (d) and did not request exclusion."

to specify that a class action may be brought and the requirements for bringing it under the CLRA.[9]

As discussed *ante*, nothing in the UCL suggests that Code of Civil Procedure sections 382 and 384 should not apply to the UCL. To the contrary, the UCL has been repeatedly amended since *Fletcher, supra,* 23 Cal.3d 442, and the Legislature has never seen fit to interfere with the common practice, since *Fletcher,* of certifying UCL claims in appropriate cases. (See fn. 2 *ante.*) As discussed *ante,* Code of Civil Procedure section 384 provides that unpaid class action residuals shall be "distributed, to the extent possible, in a manner designed either to further the purposes of the underlying causes of action, or to promote justice for all Californians . . . ." This statute is consistent with section 17203 of the UCL, which authorizes "such orders or judgments" as "may be necessary" to deter unfair competition or to restore its proceeds to interested persons. Further, as already stressed, the UCL expressly states that its remedies are cumulative and do not displace others (§ 17205). The UCL is a substantive statute and the class action statute is a procedural device for collectively litigating substantive claims. The statutes complement each other and the Legislature had no reason to specify that a fluid recovery and/or class certification is permitted with a UCL action.

## D. *Differences in Proof and Procedure*

Hayward Dodge contends that permitting a class action for a UCL claim would thwart the goal of permitting a swift remedy in UCL suits and unfairly prejudice defendants because UCL claims require a lesser measure of proof. (See, e.g., *Cortez, supra,* 23 Cal.4th at pp. 173-174, quoting *Dean Witter, supra,* 211 Cal.App.3d at p. 774 [" 'The exclusion of claims for compensatory damages [in UCL claims] is also consistent with the overarching legislative concern to provide a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition. To permit individual claims for compensatory damages to be pursued as part of such a procedure would tend to thwart this objective by requiring the court to deal with a variety of damage issues of a higher order of complexity.' "].) Consumers filing a UCL action do not have to prove that they actually have been deceived, but simply that they are likely to be deceived; the plaintiffs also do not need to prove that the defendant intended to injure anyone. (See, e.g.,

[9]Unlike a plaintiff proceeding under Code of Civil Procedure section 382, a plaintiff moving to certify a class under the CLRA is not required to show that substantial benefit will result to the litigants and the court. (*Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 134-135 [142 Cal.Rptr. 325].) Thus, unlike Code of Civil Procedure section 382, the CLRA does not require that a plaintiff show a probability that each class member will come forward and prove his or her separate claim to a portion of the recovery. (*Hogya,* at pp. 134-135.)

*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1102 [53 Cal.Rptr.2d 229].)

Hayward Dodge fails to identify how class certification would actually harm the defendants other than by being required to give up wrongfully obtained profits. It is true, as already noted, that the disgorgement of wrongfully obtained profits could be larger when the victims are not completely identified. However, the purpose of the UCL is to deprive the defendant of these profits. ▮▮▮▮▮ As previously noted, allowing the defendants to retain any portion of their illicit profits would " 'impair the full impact of the deterrent force that is essential if adequate enforcement' " of the UCL is to be achieved.[10] (*Fletcher, supra,* 23 Cal.3d at p. 451.)

▮▮ In fact, permitting a class action for UCL claims may not prejudice but benefit defendants. Judgments in individual representative UCL actions are not binding as to nonparties. Thus, a defendant may be exposed to multiple lawsuits and therefore reluctant to settle a case that will not be final as to all injured parties. With a class action, each participating member of the class is a party to the lawsuit and subject to the court's jurisdiction. Class action defendants can achieve final repose of the claims against them.

Finally, we can quickly dispose of the argument that permitting a class action would thwart the streamlined procedure intended by the UCL. There is no evidence that the purpose of the lower standard of proof in a UCL claim was to offset the consequences of prohibiting a class action. Moreover, the streamlined procedure is designed to benefit the public; the consumer would have to balance the burden and expense of a class action by its potential benefit. Providing the plaintiff with this alternative would not obstruct the purpose of the UCL, nor would it place any greater burden on the defendants. Moreover, the court would only permit class certification when the benefits outweigh the burdens. ▮▮ As our Supreme Court stated: "Although an individual action may eliminate the potentially significant expense of pretrial certification and notice, and thus may frequently be a preferable procedure to a class action, the trial court may conclude that the adequacy of representation of all allegedly injured [plaintiffs] would best be assured if the case proceeded as a class action. Before exercising its discretion, the trial court must carefully weigh both the advantages and disadvantages of an individual action against the burdens and benefits of a class proceeding for the underlying suit." (*Fletcher, supra,* 23 Cal.3d at p. 454.)

---

[10]Moreover, the reality is that often UCL actions will not be on behalf of a class because class plaintiffs must be "truly representative of the absent, unnamed class members" (*Bartlett v. Hawaiian Village, Inc.* (1978) 87 Cal.App.3d 435, 438 [151 Cal.Rptr. 392]), while a private party has UCL standing even if he or she is not aggrieved (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211, 215 [197 Cal.Rptr. 783, 673 P.2d 660]).

## II. *Individualized Issues*

 Bank of America acknowledges that the trial court rejected the class certification of the UCL claim as a matter of law, but it contends that the court's order should be affirmed on the alternative basis that individual factual issues predominate, making a class action inappropriate. It argues that the order must be affirmed if the trial court's action is correct on any legal theory. (See, e.g., *Cohen v. Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 673 [242 Cal.Rptr. 84]; *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16 [68 Cal.Rptr.2d 837].)

On November 8, 2001, the trial court ruled that Corbett cannot, "as a matter of law, certify a class to pursue [a claim under sections 17200 and 17500]. There is a distinction between bringing a claim in a representative capacity and bringing a claim on behalf of a class." On November 26, 2001, Corbett filed a renewed motion for class certification on all of his causes of action except for his UCL claim. The court, on December 24, 2001, denied this motion on grounds that the class was not ascertainable, individual issues predominated over common issues, and Corbett was not typical of the putative class because he neither read the financing contract nor recalled the transaction.

Bank of America argues that the factual issues related to the other claims and set forth in the order dated December 24, 2001, apply equally to the UCL claim. We disagree. The refusal to certify a class on other claims is not dispositive on whether the UCL claim should be certified, because the UCL claim is materially different from the other causes of action. Relief under the UCL is available without individualized proof of deception, reliance, and injury. (*Fletcher, supra*, 23 Cal.3d at pp. 452-453; *Mass. Mutual, supra*, 97 Cal.App.4th at p. 1288.) Much of the court's reasoning with respect to its refusal to certify a class for the non-UCL causes of action focused upon the problems of individual questions of reliance—what each class member knew and whether each member would have acted differently had the person known of the dealer reserve. Under the UCL, a plaintiff need not show reliance or injury and therefore many of the problems with certification relating to the other claims may not apply here. (See, e.g., *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128, 1144 [111 Cal.Rptr.2d 296] ["[U]nder the UCL, a representative plaintiff need not prove that members of the public actually were deceived, relied upon the fraudulent practice, or sustained any damage."].)

Since the manner of proof differs between UCL claims and other tort claims, we are not in a position to determine whether the problems with

certifying a class as to the other claims have any applicability to the UCL claim. We express no opinion as to whether a class should be certified, since the trial court is better suited to address this issue. However, the trial court erred when it ruled that Corbett may not bring a class action for the UCL claim as a matter of law.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order refusing to consider a class action under the UCL, and to consider further disposition of this matter in accordance with the views expressed herein. Costs are awarded to Corbett.

Kline, P. J., concurred.

**HAERLE, J.**—I respectfully dissent. I believe the majority's opinion is wrong for a variety of reasons.

## I. *Irrespective of the Compatibility of Class Actions and UCL Actions, This Petition Should Be Denied*

### A. *This Is an Inappropriate Case for Writ Relief*

When the present petition first came before us, I dissented from the issuance of the order to show cause and took the somewhat unusual step (in this court anyway) of stating why. I said: "[I] would not have granted the order to show cause because, in [my] opinion, the trial court's December 24, 2001, order denying, on several different grounds, petitioner's motion for class certification of all remaining causes of action (including a portion of the fifth cause of action) renders the present petition substantially if not entirely moot."

Some procedural background of this case may help explain my prior—and continued—concern. The initial complaint (minus any cause of action under the unfair competition law (hereafter UCL)) was filed in April 2000. Almost 17 months later, petitioner's motion for class certification was denied[1] but, in the same order, he was granted leave to file a third amended complaint. Three days later, he filed such a complaint, the one before us

---

[1] Although the matter is not clear from the record before us, presumably this denial was of a motion related to a second amended complaint, a document not provided us by any party.

here. It added a fifth cause of action under Business and Professions Code section 17200.[2]

On September 19, 2001, one of the defendants, Hayward Dodge, Inc., filed a motion to strike certain specific words and phrases from one paragraph of that fifth cause of action and one paragraph of the complaint's prayer for relief on the ground, inter alia, that neither forms of relief prayed for (disgorgement and restitution) are permitted under the UCL. On November 8, 2001, the trial court issued its order partially granting and partially denying the motion to strike (November 8 order). It granted the motion as it related to the relief of disgorgement but denied it regarding restitutionary relief. Specifically, it struck from paragraph 71 of the fifth cause of action eight words relating to disgorgement relief and nine similar words from paragraph 5 of the complaint's prayer for relief, a total of 17 words. That, and only that, was the sum total of the relief granted by the November 8 order, the only order being challenged by the petition before us.

The trial court offered two separate and distinct justifications for its order. The first was, inter alia, that under *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*), disgorgement relief is not permitted. Then, in a separate paragraph, the court set forth a second and clearly separate basis for its ruling, the basis to which the majority opinion is addressed, i.e., that a representative UCL action cannot be maintained as a class action.

The trial court's first rationale for its order was expressly conceded by petitioner in his opposition to Hayward Dodge's motion to strike. In that pleading—not referenced by the majority—petitioner's counsel stated: "[P]laintiffs do not disagree with defendant Hayward Dodge's analysis with respect to the effect of the California Supreme Court's decision in *Kraus* on their claims for disgorgement of funds. After *Kraus*, California courts are no longer able to issue orders for disgorgement of ill-gotten gains or unlawful profits through their equitable powers pursuant to a strictly representative, non-class action claim under Section 17200."

Just a couple of weeks after the issuance of the November 8 order, petitioner filed a motion for class certification of his other four causes of

---

[2]All subsequent statutory references are to the Business and Professions Code unless otherwise noted.

action.[3] This motion was denied on December 24, 2001 (December 24 order).[4] The court's reasons for its denial were several: (1) "the class as defined is overbroad," (2) petitioner had made an inadequate showing of common questions of fact, and (3) plaintiff was not "typical" because, according to his own testimony, he never read the financing contract and did not recall the transaction. The trial court concluded by declining to grant leave to substitute in a "typical plaintiff or plaintiffs . . . because the claims at issue could not be certified for class treatment even if a 'typical' plaintiff could be located."

This was so, according to the December 24 order, for two reasons: (1) the motion only sought "to certify a class to prosecute the first, second, third and fourth causes of action in the third amended complaint" and (2) it had previously held, via its November 8 order, that petitioner "cannot certify a class to pursue the fifth cause of action under Business and Professions Code [section] 17200." The order's denial of class certification was expressly "without prejudice to Plaintiff making a further application for class certification," although the language of the order seems to suggest that, in order to achieve class certification via a future motion, petitioner will have the substantial burden of discovering and then presenting evidence of the requisite common questions of law and fact.

A few weeks later, on January 18, 2002, petitioner filed this petition. In it, he attacks *only* the November 8 order granting the motion to strike. Indeed, he did not even bring the December 24 order to our attention. That important document was supplied to us by respondent Bank of America, N.A. in exhibits filed with its opposition to the petition.

Let me then summarize the procedural posture in which the majority elects to opine on the availability of class action procedures and relief under the UCL: (1) Hayward Dodge's motion was only to strike a very few specific phrases from a single paragraph in the fifth cause of action and another paragraph in the prayer for relief; (2) that motion was granted only as to the words pertaining to disgorgement relief and denied as to those

---

[3]This motion was apparently filed on November 26, 2001, but it is not in the record before us. Thus, we are left only with the description of it provided by the trial court in its December 24 order.

[4]This second denial of a motion for class certification did not implicate petitioner's UCL cause of action. At one point, the majority acknowledges this; it says petitioner "filed a renewed motion for class certification on all of his causes of action except for his UCL claim." (Maj. opn., *ante*, at p. 657; see also maj. opn., *ante*, at p. 672.) Later, however, it confuses matters by seeming to characterize the order under review (partially granting a motion to strike) as "an order granting or denying class certification." (Maj. opn., *ante*, at p. 658.

implicating restitutionary relief; (3) in his pleadings to the trial court, petitioner conceded that striking the disgorgement-related words was justified under *Kraus*; (4) the trial court's "no class action under section 17200" rationale was only one of two offered to justify its ruling; (5) *even if*, contrary to that rationale, class certification is appropriate for UCL causes of action, *on the record before it* the trial court would almost certainly have come to the same conclusion regarding the inappropriateness of class certification for the fifth cause of action because of the absence of common questions of law and fact and the non-typicality of petitioner; (6) the order partially granting the motion to strike was filed *before* any motion for class certification relating to any aspect of the operative complaint was filed; (7) when such a motion was filed, it did not implicate the UCL cause of action; (8) the UCL cause of action survives in all respects except for eight disgorgement-related words; (9) petitioner is expressly free to move again for class certification, but clearly will have to do so on the basis of as-yet-undisclosed evidence of common questions of law and fact plus, in all likelihood, a plaintiff or plaintiffs more "typical" than this petitioner.

In light of this background, I find this case a singularly inappropriate one for the grant of a writ. "It is well known that writ relief is deemed 'extraordinary.' We deny the vast majority of petitions we see and we rarely explain why. In reality, perhaps the most fundamental reason for denying writ relief is the case is still with the trial court and there is a good likelihood purported error will be either mooted or cured by the time of judgment." (*Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1100 [46 Cal.Rptr.2d 332].)

Another leading case concerning the propriety of writ relief states: "The large number of rejections of writ petitions demonstrates that courts will not use their scarce resources to second-guess every ruling and order of the trial court, particularly when to do so would save neither time nor aid in the resolution of a lawsuit. [Citation.] [¶] Writ relief, if it were granted at the drop of a hat, would interfere with an orderly administration of justice at the trial and appellate levels. Reviewing courts have been cautioned to guard against the tendency to take ' ". . . too lax a view of the 'extraordinary' nature of prerogative writs . . ." ' [citation] lest they run the risk of fostering the delay of trials, vexing litigants and trial courts with multiple proceedings, and adding to the delay of judgment appeals pending in the appellate court. [Citations.] [¶] 'If the rule were otherwise, in every ordinary action a defendant whenever he chose could halt the proceeding in the trial court by applying for a writ of prohibition to stop the ordinary progress of the action toward a judgment until a reviewing tribunal passed upon an intermediate question that had arisen. If such were the rule, reviewing courts would in

innumerable cases be converted from appellate courts to nisi prius tribunals.' [Citation.]" (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1272 [258 Cal.Rptr. 66].)

In the present case, there was never even a motion for class certification regarding the relevant cause of action, only a motion to strike a few words regarding one part of the prayed-for relief. And that motion was granted only in part. The trial court's later ruling denying class certification for petitioner's other four causes of action suggested rather clearly that such would also be the fate of the UCL cause of action *given the present state of the record.* However, that motion was also denied without prejudice and petitioner was expressly allowed to attempt to discover evidence of common questions of law and fact.

The admittedly interesting question of whether, after *Kraus* and *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163 [96 Cal.Rptr.2d 518, 999 P.2d 706] (*Cortez*), there is any possible overlap between class actions under Code of Civil Procedure section 382 and representative actions under section 17204 should, I believe, await a case in which that issue is explicitly presented to the trial court by a motion for class certification and in which the trial court's ruling on such a motion is not likely (or, as in the present case, almost inevitably) to be mooted by future events.

B. *The Trial Court's Order Is Entirely Justifiable Under Its First Rationale*

The majority's opinion inexplicably confuses the *order of the court under review* with one of the *two reasons* the court gave for the entry of that order. In so doing, it misses the point that, even assuming the incorrectness of the trial court's second rationale for that order, its first is clearly—and conceded by the petitioner to be—correct.

A basic principle of appellate jurisprudence, but one overlooked by the majority, is that an "appealed . . . order *correct on any theory* will be *affirmed,* even though the trial court's reasoning may have been erroneous." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2001) ¶ 8:214, p. 8-106.) "If the decision of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion." (*Mike Davidov v. Issod* (2000) 78 Cal.App.4th 597, 610 [92 Cal.Rptr.2d 897]; see also *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473]; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 [35 Cal.Rptr.2d 669, 884 P.2d 126].)

As the majority itself notes, *Kraus* makes clear that "the only monetary relief available in a UCL action is restitution."[5] (Maj. opn., *ante*, at p. 666, fn. 7.) Others agree: "In *Kraus*, the court held that restitution to direct victims is the only monetary remedy available under the UCL." (Karas, *The Role of Fluid Recovery in Consumer Protection Litigation: Kraus v. Trinity Management Services* (2002) 90 Cal. L.Rev. 959, 971-972 (hereafter Karas).) But if there is any lingering doubt on this point, the dispositive ruling in *Kraus* reads as follows: "[T]he order for disgorgement of the liquidated damages/security fees may be enforced only to the extent that it compels restitution to former tenants." (*Kraus, supra,* 23 Cal.4th at p. 138.) And, earlier, the court defined "restitution orders" as meaning, and meaning only, "orders compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken." (*Id.* at pp. 126-127.)

The majority states: "If the trial court's ruling that the UCL claim could not be maintained as a class action as a matter of law is legally flawed, no other basis remains for sustaining the court's ruling." (Maj. opn., *ante*, at p. 658.) This statement is flatly wrong for two reasons. First of all, it confuses the trial court's "ruling" with one of two bases it articulated in support of that ruling.[6] Its "ruling" was that 17 words should be stricken from the third amended complaint; what the majority is criticizing is *the second of two stated bases for that ruling.* Second, the "basis [that] remains for sustaining the court's ruling" is, to quote the order in question: "Kraus holds that disgorgement of allegedly ill-gotten profits is a remedy only insofar as it is a mechanism to permit restitution of funds. . . . This does not preclude the possibility of . . . the use of disgorgement as a mechanism to effect restitution."

I respectfully pose the following questions:

(1) If the majority is so anxious to reverse the lower court's November 8 ruling, shouldn't we just order the 17 disgorgement-related words restored to the complaint? But how can that be after *Kraus*?

(2) If the case is returned to the trial court pursuant to the present order, what would possibly be wrong with its issuing precisely the same order it

---

[5]Although, as I point out later (see *post*, at pp. 690-692), the majority promptly contradicts this statement when it aggressively advocates permitting the marriage of a representative UCL action and fluid recovery. (See, e.g., maj. opn., *ante*, at pp. 655, 659-660, 667-668, 670.)

[6]The majority repeats this error in its conclusion and dispository order. It says: "[T]he trial court erred when it ruled that Corbett may not bring a class action for the UCL claim as a matter of law" and then orders that court "to vacate its order refusing to consider a class action under the UCL . . . ." (Maj. opn., *ante*, at p. 673.) But that was *not* the trial court's "order," only one of the bases offered in explanation of it.

did previously—i.e., striking the same 17 words—but omitting any language concerning the incompatibility of representative UCL actions and class actions and, instead, justifying the order solely on its first-stated basis?

### C. *The Petition Should Be Denied Because Petitioner Is Not "Typical"*

At the minimum, consideration of the important issues addressed in the majority opinion should at least await a case in which the record does not include—as this record does—an explicit factual finding by the trial court that the plaintiff seeking class representative status is not "typical."

It will be recalled that, in its December 24 ruling denying class certification as to the first four causes of action, the trial court, relying on petitioner's own deposition testimony, specifically agreed with the defendants' contention that he "is not a typical plaintiff" because he "never read the financing contract and does not recall the transaction."

There is no challenge to this ruling by petitioner in the record before us. But even if there were, a trial court's denial of class certification based, e.g., on findings that a putative class representative is not typical or that there are insufficient common questions of law or fact, is generally reviewable under an abuse of discretion standard of review. (See, e.g., *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 914 [103 Cal.Rptr.2d 320, 15 P.3d 1071] (*Washington Mutual*); *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1233 [87 Cal.Rptr.2d 346].) I submit there is no possible basis for finding any abuse of discretion in the trial court's determination that petitioner is not typical of the putative class. This was the second time this trial court had entertained a motion for class certification in this action and, clearly, it carefully examined the record before it, including specifically petitioner's deposition.

Petitioner and the majority have an answer to this: they contend that the issue of "typicality" will necessarily be determined under a far more liberal standard as and when a UCL claim is considered for class action status. (See, e.g., maj. opn., *ante*, at p. 671 and fn. 10.) There are two things wrong with this proposition. In the first place, bearing in mind UCL substantive law on the lack of any need for damage, standing, reliance, etc. (see *post*, at p. 682), if petitioner and the majority are correct, it will mean that a "typical" UCL class action plaintiff could be, literally, anyone putative class counsel dragoons off the street. Second, this liberal standard was not the way petitioner's counsel pled typicality; that topic was addressed in a single paragraph of his third amended complaint in words expressly applicable to *all* causes of action.

On these two bases, it seems to me inconceivable that petitioner would ever be found "typical" *even if* his UCL claim could be certified as a class action. For this additional reason, therefore, the petition should be denied.

## II. *Representative UCL Actions and Class Actions Are Fundamentally Inconsistent*

Regarding the substantive issue of whether representative UCL actions and class actions are compatible, I start with a single sentence from a footnote of a very recent Court of Appeal case, a case like ours antedating both *Kraus* and *Cortez*. In *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1290, fn. 3 [119 Cal.Rptr.2d 190] (*Mass Mutual*), the court put the whole matter very succinctly: "As Mass Mutual points out, a representative action under the UCL is different from a class action." I agree, but I would go a bit further. I believe the differences between class actions brought under Code of Civil Procedure section 382 and representative UCL actions brought under section 17204 are so substantial that the two are mutually inconsistent.

Of course, class action law is totally procedural; neither Code of Civil Procedure section 382, the later-enacted Code of Civil Procedure section 384, nor any case interpreting or applying those sections, purport to lay down substantive legal standards.[7] The UCL, by contrast, contains both substantive and procedural provisions. Section 17200 is the substantive provision and sections 17203 and 17204 the principal procedural ones.

Section 17203 provides that a court may enjoin unfair competition, i.e., a violation of section 17200 and, in the process, may order relief "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Section 17204 then provides that an action brought to enforce the UCL is one to enforce public, not private, rights. It reads, in pertinent part: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or . . . by any person *acting for the interests of . . . the general public*." (Italics added.)[8]

In recent years, actions by private individuals or groups brought under section 17204 have been labeled "representative actions." (See, e.g., *Kraus,*

---

[7]"Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 462 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; see also *Vernon v. Drexel Burnham & Co.* (1975) 52 Cal.App.3d 706, 716 [125 Cal.Rptr. 147].)

[8]Section 17201 provides that the term "person" includes natural persons.

*supra* 23 Cal.4th at pp. 126-138.) In the leading case of *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17 [141 Cal.Rptr. 20, 569 P.2d 125] (*Pacific Land Research*), our Supreme Court described the essentially "public good" nature of a such an action: "An action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained. Civil penalties, which are paid to the government [citations] are designed to penalize a defendant for past illegal conduct. The request for restitution on behalf of vendees in such an action is only ancillary to the primary remedies sought for the benefit of the public. [Citation.] While restitution would benefit the vendees by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions."

That analysis applies even when the UCL action is brought by a private citizen. As one group of knowledgeable authors has written: "While B&P section 17203 representative actions can be brought by both public officials and private parties, no distinction has been made between the two types of plaintiffs in interpreting either the substantive prohibitions of B&P section 17200 or the injunctive or restitutionary remedies available under section 17203. Because dozens of reported appellate court opinions have considered representative action law, the lack of distinction is settled, and opinions interpreting section 17200 in cases brought by public officials are fully applicable to private representative actions." (McCall et al., *Greater Representation for California Consumers—Fluid Recovery, Consumer Trust Funds, and Representative Actions* (1995) 46 Hastings L.J. 797, 816-817, fn. omitted.)

Quite obviously, our Supreme Court agrees. Four years ago, not only a large business respondent, but also numerous amici curiae (including the California Chamber of Commerce) *and* the Attorney General urged the court to rule that only "public prosecutors" could sue under the UCL to enforce the Penal Code's ban on sales of cigarettes to minors. The court rejected this request, expressly declining the "invitation judicially to categorize potential plaintiffs as qualified or unqualified to maintain UCL claims on behalf of the general public. The Legislature has expressly provided that 'any person' [citation] may maintain such a suit, and—it need hardly be noted—should the Legislature disagree with our conclusion here, it remains free to provide otherwise." (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 578 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; see also *Kasky v.*

*Nike, Inc.* (2002) 27 Cal.4th 939, 949-950 [119 Cal.Rptr.2d 296, 45 P.3d 243].)

In contrast to representative UCL actions, class actions are fundamentally *private* actions seeking (at least usually) to recover damages in tort or contract suffered by a large number of similarly situated private citizens. In order to proceed under Code of Civil Procedure section 382, there must be *both* "an ascertainable class" *and* "a well defined community of interest in the questions of law involved affecting the parties to be represented." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).) "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Linder, supra,* 23 Cal.4th at p. 435; see also *Mass Mutual, supra,* 97 Cal.App.4th at p. 1287.) Another relevant consideration is whether "each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery . . . ." (*Linder, supra,* 23 Cal.4th at p. 435.) Additionally, our Supreme Court has instructed trial courts "'to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.'" (*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755].)

Thus, there are at least two fundamental differences between representative UCL actions and class actions. First of all, the former are brought under a specific statute to benefit the *public,* whereas the latter are basically *private* actions. Second, the purposes of the former are deterrence and restitution while the primary goal of the latter is to provide a procedural mechanism whereby a large number of private plaintiffs may recover damages. The two types of actions are not interchangeable; as our Supreme Court has recently observed: "A UCL action is . . . not an all-purpose substitute for a tort or contract action." (*Cortez, supra,* 23 Cal.4th at p. 173.)

Even aside from these fundamental differences, there are many specific differences between the two types of actions. I will list 10 that come to mind:[9]

1. There is no need to show "standing" in a UCL action. For example, a UCL plaintiff does not even have to have been harmed. Similarly, actual damages to the plaintiff need not be shown nor any reliance regarding alleged misrepresentations. All of these things must, of course, be shown in

---

[9]Practically none of which, I regret to note, the majority addresses.

a class action; further, the plaintiff's damages must be "typical" of the class to be represented. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 567; *Pacific Land Research, supra,* 20 Cal.3d at p. 18, fn. 7; *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438]; *Consumers Union of United States, Inc. v. Fisher Development, Inc.* (1989) 208 Cal.App.3d 1433, 1439-1444 [257 Cal.Rptr. 151]; *Mass Mutual, supra,* 97 Cal.App.4th at p. 1288; Karas, *supra,* 90 Cal. L.Rev. at pp. 968, 979-980).

2. The intent of the defendant and the knowledge of customers generally regarding the unfair competitive practice are both unimportant in UCL actions. (See *Chern v. Bank of America* (1976) 15 Cal.3d 866, 876 [127 Cal.Rptr. 110, 544 P.2d 1310].) Additionally, all that need be shown in UCL actions is that the challenged business practice is likely to deceive consumers, not that it has actually done so. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660]; *Mass Mutual, supra,* 97 Cal.App.4th at p. 1289.) By contrast, plaintiffs in class actions alleging fraud "bear the traditional burden of required of victims of common law fraud." (*Mass Mutual, supra,* 97 Cal.App.4th at p. 1288.)

3. In class actions, damages may be sought; not so in representative UCL actions. In those actions, the only monetary relief available is restitution. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *People v. Superior Court* (*Jayhill*) (1973) 9 Cal.3d 283, 286 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191] (*Jayhill*); *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 774 [259 Cal.Rptr. 789] (*Dean Witter*).) And restitution "is not the primary object of the suit, as it is in most private class actions." (*Pacific Land Research, supra,* 20 Cal.3d at p. 17.)

4. In class actions, numerous procedural protections exist to protect a defendant from possible multiple actions; no such protections apply in representative UCL actions. "[A] representative UCL action is not subject to the same level of judicial supervision as a class action . . . ." (*Kraus, supra,* 23 Cal.4th at p. 137; see also *Pacific Land Research, supra,* 20 Cal.3d at pp. 17-18.)

5. In class actions, disgorgement into a fluid recovery fund is permissible and appropriate. (Code Civ. Proc., § 384, subd. (b).) In representative

UCL actions, *any* disgorgement over and above basic restitution is not available. (See *Kraus, supra,* 23 Cal.4th at pp. 125-126, 137-138.)

6. Punitive damages are not recoverable in an action brought under the UCL. (*Jayhill, supra,* 9 Cal.3d at p. 287.) They clearly are in class actions.

7. The UCL was and is intended to provide a *"streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition." (*Dean Witter, supra,* 211 Cal.App.3d at p. 774, quoted approvingly in *Cortez, supra,* 23 Cal.4th at pp. 173-174.) "In contrast to the streamlined procedure expressly provided by the Legislature, the management of a class action is 'a difficult legal and administrative task.'" (*Dean Witter, supra,* 211 Cal.App.3d at p. 773, quoting *Lazar v. Hertz Corp.* (1983) 143 Cal.App.3d 128, 143 [191 Cal.Rptr. 849].) Thus, in many ways, class actions are "procedurally quite different from UCL actions" because, among other things, "without the notice and certification requirements of class actions, UCL suits may move much more swiftly to settlement or trial than class actions." (Karas, *supra,* 90 Cal. L.Rev. at pp. 964, 969.)

8. "[U]nlike class actions, private settlements of UCL actions only bind the individual who brought the action, not the entire plaintiff class." (Karas, *supra,* 90 Cal. L.Rev. at p. 969.)

9. There is no notice requirement in UCL actions, whereas in class actions "potential claimants would receive notice of the lawsuit and would have the opportunity to come forward and show their entitlement to recovery in a particular amount." (Karas, *supra,* 90 Cal. L.Rev. at p. 985, fn. 164.)

10. A defendant in a class action may, of course, insist upon a determination of the composition of the class before an adjudication on the merits; he has no similar rights under the UCL, even if the action does not seek restitution. (*Pacific Land Research, supra,* 20 Cal.3d at p. 18.)

Because of these numerous differences, several reported cases agree with *Mass Mutual* that the two types of actions are, indeed, "different." (*Mass Mutual, supra,* 97 Cal.App.4th at p. 1290, fn. 3.) For example, in *Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 72 [164 Cal.Rptr. 279], the court noted: " 'Nor is an action on behalf of the general public, prosecuted by a private attorney general, to be confused with a class action, wherein damage to the representative plaintiff is required.' " (See also, to the same effect, *Consumers Union of United States, Inc. v. Fisher Development, Inc., supra,* 208 Cal.App.3d at p. 1439.)

And in *Pacific Land Research*, Justice Mosk wrote for a unanimous court: "[W]e do not agree that consumer protection actions brought by the People, seeking injunctive relief, civil penalties and restitution, are the equivalent of class actions brought by private parties, requiring the same safeguards to protect a defendant from multiple suits and other harmful consequences. [¶] . . . [¶] Furthermore, an action by the People lacks the fundamental attributes of a consumer class action filed by a private party. The Attorney General or other governmental official who files the action is ordinarily not a member of the class, his role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests [citation] and the claims and defenses are not typical of the class [citation]." (*Pacific Land Research, supra,* 20 Cal.3d at pp. 17-18, fns. omitted.)[10]

Most recently, in the course of holding that the remedy of disgorgement of wrongly collected monies into a fluid recovery fund was not permitted under the UCL, the *Kraus* court used wording which seems to confirm that it regards the two forms of action as, indeed, "different." It wrote: "Nonetheless, reading section 17203 as permitting orders for disgorgement into a fluid recovery fund would be inconsistent with the Legislature's decision to expressly authorize fluid recovery in class actions and to provide that Consumers Legal Remedies Act [citation] suits on behalf of the plaintiff and other similarly situated consumers *may be brought as class actions, not representative actions,* while failing to authorize fluid recovery in representative UCL actions. [¶] In sum, the Legislature has not expressly authorized monetary relief other than restitution in UCL actions, but has authorized disgorgement into a fluid recovery fund in class actions. *Although the Legislature is well aware of the distinction between class actions and representative actions,* it has not done so for representative UCL actions." (*Kraus, supra,* 23 Cal.4th at p. 137, italics added.)

Even Justice Werdegar, dissenting from the holding of *Kraus*, noted the many inconsistencies between the two types of actions: "UCL actions often are formally incompatible with class treatment, as class plaintiffs must be 'truly representative of the absent, unnamed class members' [citation] while, in keeping with the UCL's broad remedial purposes, a private party has UCL standing regardless of whether he or she is directly aggrieved. [Citations.]" (*Kraus, supra,* 23 Cal.4th at p. 147 (dis. opn. of Werdegar, J.).)

The majority's response is that neither *Kraus, Cortez* nor any other precedent has explicitly held that class action relief is "incompatible" with a

---

[10]As noted above (see *ante,* at p. 681), these words clearly apply to *both* actions brought by a law enforcement official *and* by a "private attorney general." (See, e.g., *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at pp. 574-578.)

representative UCL action (maj. opn., *ante*, at pp. 655, 658, 660, 663) or that the two types of actions are "mutually exclusive." (Maj. opn., *ante*, at p. 655.) I concede that there is no such explicit precedent. I also concede the majority's point that, apparently, a number of trial courts have permitted UCL actions to be certified as class actions. But a combination of (1) the language in *Kraus*, especially that quoted above, and (2) a consideration of the many fundamental and specific differences between class actions and representative UCL actions (I have listed several above—there are undoubtedly others) convinces me that the two actions are not only "different" (*Mass Mutual, supra,* 97 Cal.App.4th at p. 1290, fn. 3), but incompatible.

A recent decision in a representative UCL action demonstrates how just one of the many inconsistencies between these two types of actions precludes any overlap between them. In *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128 [111 Cal.Rptr.2d 296] (*Prata*), a panel of the Second District issued a writ of mandate directing the superior court to vacate an order that the petitioner could not bring a representative action under the UCL against a bank for an allegedly deceptive and misleading marketing campaign for a credit-card financing program. One of the arguments of the defendant bank was that the petitioner was not a proper representative of other consumers because, among other things, he had "refused to pay" the allegedly improper finance charges and hence "is not entitled to individual restitution." (*Id.* at p. 1139.) The court rejected this argument, noting that a UCL violation " 'can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.' [Citation.]" (*Id.* at p. 1146.)

But consider what would have happened had the plaintiff in *Prata* been seeking class certification. Which body of precedent would apply, that requiring a class representative to have suffered damage typical of the putative class or that holding that no such showing is required for a representative UCL action? Similarly, would representative UCL precedent or class action precedent apply if the issue before the trial court was reliance? And what about protection from multiple suits after a judgment or settlement of a prior class/UCL action—which would apply, class action law clearly protecting defendants from multiple liability or the holding of *Pacific Land Research* that representative UCL actions do not require "the same safeguards to protect a defendant from multiple suits and other harmful consequences"? (*Pacific Land Research, supra,* 20 Cal.3d at p. 17.)

The majority strongly implies that as and when a UCL action is certified as a class action, UCL law "trumps" otherwise inconsistent class action law. Thus, the majority suggests that UCL law should prevail over class action

law regarding (1) "individualized proof of deception, reliance, and injury" and (2) regarding the typicality of the plaintiff. On the latter issue (a key one in this case—see pt. I. C., *ante*) the majority strongly implies that the more liberal UCL standard will control. (Maj. opn., at pp. 670-673.)

These holdings are, first of all, inconsistent with the majority's holding approving disgorgement into a fluid recovery fund in a UCL class action.[11] Additionally, they would clearly create a procedural nightmare for a trial court. The instant case is a classic example: this petitioner has already been ruled "non-typical" regarding his first four causes of action. But suppose he is "typical" for the UCL cause of action under the majority's suggested liberalized standard. The trial court then has to try a case which is a class action as to one of five causes of action but only an individual action to the other four. I am perplexed that the majority does not perceive the huge number of procedural and evidentiary problems inherent in such a bizarre situation. Similarly, the majority would countenance class certification *and* relief for a UCL claim in the absence of evidence of actual deception, although both would be inappropriate for all other causes of action. Finally, after oral argument in this matter, I am clearly not pushing the envelope too far by suggesting that the majority's implied liberalized standard could well apply to the core issue in class actions, the commonality of questions of law and fact.[12]

All of the foregoing assumes that the action at issue is a "representative UCL action." There remains the question of whether *all* actions brought under the UCL are such. The first time our Supreme Court used the phrase "representative UCL actions" in *Kraus*, it footnoted the term and said in the footnote: "We use the term 'representative action' to refer to a UCL action that is not certified as a class action in which a private person is the plaintiff and seeks disgorgement and/or restitution on behalf of a person other than or in addition to the plaintiff." (*Kraus, supra,* 23 Cal.4th at p. 126, fn. 10.)

This footnote seems to suggest that there can, indeed, be a nonrepresentative UCL action in which the plaintiff does not purport to represent the public good. One example of such an action is where a plaintiff sues under the UCL to collect restitutionary sums, and nothing more. Exactly this was sanctioned in the recent case of *Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1045-1047 [111 Cal.Rptr.2d 260]. Another

---

[11]There is one element of consistency between the majority's handling of the fluid recovery issue and the other differences between UCL law and class action law: both of its positions are favorable to UCL plaintiffs.

[12]At oral argument, petitioner's counsel argued that in a UCL/class action the issue of the commonality of issues of law and fact would necessarily be more relaxed.

example is where a plaintiff alleging actual injury typical of a large group of potential litigants sues under multiple statutes, among them section 17200, but does not seek an injunction to enforce the public good but only monetary relief of various types. Examples of this sort of nonrepresentative UCL actions may well be *Mass Mutual* and *Washington Mutual*. In *Mass Mutual*, several plaintiffs alleged that they had purchased a particular type of "vanishing premium" life insurance policy and that the defendant had, in violation of both the UCL and the Consumers Legal Remedy Act, failed to disclose to any of the purchasers of these policies its plans to "ratchet down" the dividend payable on it. (*Mass Mutual, supra,* 97 Cal.App.4th at p. 1286.) As far as can be determined from the opinion, the only relief sought was monetary class action relief.[13]

Similarly, in *Washington Mutual* a single plaintiff sued a mortgage lender "on behalf of herself and all others similarly situated" on five causes of action, including one under the UCL. (*Washington Mutual, supra,* 24 Cal.4th 906.) Again, as far as can be determined from the court's opinion, the only relief sought on behalf of the putative class was monetary.

Significantly, Justice Epstein, writing for a unanimous court in *Prata*, recognized that an action alleging a violation of section 17200 can be of two types: a representative action or one asserting "an individual cause of action." (*Prata, supra,* 91 Cal.App.4th at p. 1139.) The former, he suggested, are those brought under section 17204, while the latter are those brought under section 17203. (*Prata,* at p. 1138.)

The instant case was filed under section 17204 and clearly qualifies as a representative UCL action. The third amended complaint includes two paragraphs making this clear. Paragraph 68 of the fifth cause of action alleges that "Under Business & Professions Codes[*sic*] §§ 17201 and 17204, Plaintiff asserts standing on behalf of himself *and on behalf of the general public.*" (Italics added.) Paragraph 72 follows on from this and alleges: "Defendants' unlawful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to the public . . . ." I submit that these allegations make clear that this petitioner has—deliberately and consciously—brought a representative UCL action.

---

[13]This may well be why the *Mass Mutual* court made such a careful point of distinguishing the case before it from *Prata, supra,* 91 Cal.App.4th 1128. *Prata,* it specifically noted, was a "representative action under the UCL," and it then dropped its pregnant footnote noting that "a representative action under the UCL is different from a class action." (*Mass Mutual, supra,* 97 Cal.App.4th at p. 1290, fn. 3.) The corollary of this would seem to be that a nonrepresentative action under the UCL, i.e., one brought—at least partially—because of an alleged violation of section 17200 by a typical plaintiff or plaintiffs having classic standing, and not seeking to enforce the public good pursuant to section 17204, may well qualify for class action status.

In support of its contrary argument, the majority relies substantially on *Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442 [153 Cal.Rptr. 28, 591 P.2d 51] (*Fletcher*).[14] In that case, the court held that the trial court erred in dismissing a class action seeking to recover restitution from a bank based on lending practices alleged to be deceptive under section 17535. I don't believe *Fletcher* is controlling here for several reasons.

First of all, *Fletcher* was decided long before the court started articulating the differences between representative UCL actions and class actions, as it clearly did in *Kraus* and *Cortez*. Second, and probably more importantly, all the majority opinion in *Fletcher* held is that it was unnecessary for each of the over 50,000 bank customers composing the alleged class to have personal knowledge of the offending interest-calculation policy of the defendant bank for the case to proceed as a class action. On that point, the court held that "the trial court in the instant case erroneously determined that an order of restitution under section 17535 must be predicated upon individualized proof of lack of knowledge." (*Fletcher, supra,* 23 Cal.3d at p. 454.) Third, nowhere in *Fletcher* did the majority even mention section 17204, much less the underlying nature of a "representative UCL action." Finally, citing *Jayhill* and seemingly anticipating the decades-later holding of *Kraus*, the *Fletcher* majority strongly hinted that an action seeking injunctive relief and restitution as ancillary relief could well be preferable to a class action for the sorts of claims at issue in that case. (*Fletcher, supra,* 23 Cal.3d at pp. 453-454.)

Finally, it is noteworthy in all of this that our Legislature, notwithstanding numerous amendments to the UCL (well documented by the majority), has never authorized class action relief under it. If the Legislature had wanted to somehow marry these two different types of actions, it could have done so long ago. It is not for this court to do so for it now.

---

[14]The majority also cites our holdings in *Dean Witter, Washington Mutual,* and *Mass Mutual* as impliedly indicating there is some overlap between the two types of actions. I disagree. The core of our holding in *Dean Witter* was that the UCL claims of that plaintiff "should not proceed as a class action" because the fundamental differences between such an action and a UCL action strongly suggested that a class action would *never* provide "a superior method for adjudicating the unfair competition claims." (*Dean Witter, supra,* 211 Cal.App.3d at p. 773.) And in *Washington Mutual, supra,* 24 Cal.4th 906, a unanimous court held that the trial court had improperly certified a class in a multi-cause of action case. The entire thrust of the court's holding related to choice of law and selection-of-applicable-law issues; nary a word was said about whether the inclusion of a section 17200 cause of action among those certified for class treatment was or was not a problem. And, as noted above, neither it nor *Mass Mutual* appears to have been a representative UCL action filed under section 17204. Rather, both seem to have been multi-cause-of-action suits brought by a typical plaintiff and including a cause of action based substantively on section 17200 and seeking monetary relief under section 17203.

III. *Even if Representative UCL Actions and Class Actions Are Ever Compatible, Fluid Recovery Is Not Available Under the UCL*

At one point in its opinion, the majority concedes that it was "settled in *Kraus*" that "the only monetary relief available in a UCL action is restitution." (Maj. opn., *ante*, p. 666, fn. 7.) But then the majority goes on to contend, indeed quite aggressively, that disgorgement into a fluid recovery fund would be available as and when a UCL action is certified as a class action. (See, e.g., maj. opn., *ante*, pp. 655, 659-660, 667-668, 670.)

That proposition is wrong for two separate and distinct reasons. First of all, it contradicts the express ruling of *Kraus*, which reads: "For all of these reasons we conclude that section 17203 does not authorize orders for disgorgement into a fluid recovery fund." (*Kraus, supra,* 23 Cal.4th at p. 137.) Although presumably conscious of this sentence, the majority wishes to append to it the words "unless the action is certified as a class action." But that's not what the *Kraus* court wrote nor, plainly, what it meant. *Kraus* came to the conclusion just quoted based on the previously well-established principle that the only form of monetary relief available under the UCL was restitution. (See, e.g., *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 179; *Bank of the West v. Superior Court, supra,* 2 Cal.4th at p. 1266; *Jayhill, supra,* 9 Cal.3d at p. 286; *Dean Witter, supra,* 211 Cal.App.3d at p. 774 (Kline, P. J. conc.).)

As the trial court recognized in its ruling striking the disgorgement allegations from the third amended complaint, disgorgement in excess of restitution is unavailable in a representative UCL action. Thus, in its conclusion on the disgorgement issue the *Kraus* court ruled: "[T]he order for disgorgement of the liquidated damages/security fees may be enforced *only to the extent that it compels restitution to former tenants.*" (*Kraus, supra,* 23 Cal.4th at p. 138, italics supplied.) And *Kraus* explicitly defines an order requiring restitution as one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." (*Id.* at pp. 126-127.)[15] The majority totally fails to grasp this aspect of *Kraus*: not only

---

[15]For more regarding what restitution does and does not entail, see *Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 338-339 [74 Cal.Rptr.2d 55], *Cortez, supra,* 23 Cal.4th at pages 177-178 ("[R]estitutionary awards encompass quantifiable sums one person owes to another . . . .") and *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at page 581 (conc. opn. of Baxter, J.).

is disgorgement into a fluid recovery fund unavailable under the UCL, *but so is any disgorgement over and above restitution.*[16]

Second, the majority's holding regarding disgorgement into a fluid recovery fund misses the point that even before *Kraus* the law was clear that the availability of fluid recovery is not dependent on whether the action is certified as a class action, *but on the underlying substantive law at issue.* If that substantive law permits fluid recovery, fine; if it does not then the fact that it is a class action does not matter. There are a number of binding precedents to this effect, the leading one being *State of California v. Levi Strauss & Co.* (1986) 41 Cal.3d 460 [224 Cal.Rptr. 605, 715 P.2d 564] (*Levi Strauss*). The issue before the court there was whether or not to approve a class action settlement—including a fluid recovery provision—in a Cartwright Act case. Before ruling on that issue, the court held: "The propriety of fluid recovery in a particular case depends upon its usefulness in fulfilling the purposes of the underlying cause of action." (*Id.* at p. 472.)

This court quoted these words and relied upon the principle they articulate in *Collins v. Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 74 [231 Cal.Rptr. 638] (Kline, P. J. conc.). But now, apparently wishing to avoid *Levi Strauss*, the majority declares that case has "limited relevance to the issue here" because it preceded enactment of what is now Code of Civil Procedure section 384. (Maj. opn., *ante*, at p. 667.) Our Supreme Court may be surprised to learn this. It apparently still finds the rule that the "propriety of fluid recovery" depends upon the "underlying cause of action" to be still relevant, because it quoted exactly those words from *Levi Strauss* two years ago in *Kraus*. (See *Kraus, supra,* 23 Cal.4th at p. 135.)

Nor, clearly, did our Legislature intend to reduce *Levi Strauss* to "limited relevance" when it enacted what is now Code of Civil Procedure section 384 in 1993. In fact, both that statute (which, of course, is purely procedural anyway[17]) and its legislative history demonstrate that the Legislature intended to preserve the "underlying cause of action" principle of *Levi Strauss*. For example, Code of Civil Procedure section 384, subdivision (a) (enacted in 1993 as § 383, subd. (a)), reads in pertinent part: "It is the intent of the Legislature in enacting this section to ensure that the unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed either *to further the purposes of the underlying cause of action,* or to promote justice for all Californians . . . ." (Italics added.) And the following provision, Code of Civil Procedure section 384, subdivision (b), also links fluid recovery to the "underlying cause of action."

---

[16]Unlike the majority, a California federal district court understood *Kraus* to hold exactly this. (See *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.* (C.D.Cal. 2001) 178 F.Supp.2d 1099, 1121-1122.)

[17]See footnote 7, *ante.*

The legislative history of (now) Code of Civil Procedure section 384 further undermines the majority's "limited relevance" gambit. For example, numerous bill analyses and legislative committee reports regarding (now) Code of Civil Procedure section 384 not only cite *Levi Strauss* but also reference its "excellent discussion of the 'appropriate methods for distributing damages in consumer class actions.'" (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 536 (1993-1994 Reg. Sess.) as amended Sept. 9, 1993, p. 2.) These same reports and analyses also include statements to the effect that the proposed legislation "will permit a court to distribute the unclaimed funds in any manner which the court determines is consistent with the objectives and purposes of the underlying causes of action." (Sen. Rules Com., Off. of Sen. floor Analyses, Analysis of Sen. Bill No. 536 (1993-1994 Reg. Sess.) Sept. 10, 1993, p. 4.)

Thus, notwithstanding the majority's cavalier treatment of *Levi Strauss,* in enacting what is now Code of Civil Procedure section 384 our Legislature obviously did not intend to alter that case's rule that *the underlying substantive cause of action* must justify liquid recovery. After *Kraus,* clearly the UCL does no such thing.

Although I believe the majority's opinion is incorrect for each of the reasons detailed above, I do not find its errors to be of similar magnitude. Thus, regarding whether class actions and representative UCL actions are incompatible, I concede that the law and current practice in this state are unclear. And regarding two other issues discussed above, the appropriateness of writ relief on this record and the lower court's finding of petitioner's nontypicality, although I believe the majority's views on them to be wrong, they will not cause me many sleepless nights. The majority's truly egregious errors lie in (1) its refusal to distinguish between the order of the superior court we are reviewing and the second of two reasons the court proffered in support of that order and (2) its unabashed advocacy of the proposition that fluid recovery is compatible with a representative UCL cause of action notwithstanding our Supreme Court's two-year-old six-to-one ruling in *Kraus* quite to the contrary.

The petition of real parties in interest for review by the Supreme Court was denied December 11, 2002. Chin, J., did not participate therein. Baxter, J., and Brown, J., were of the opinion that the petition should be granted.